ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 JUN 29 PM 3: 35

CLERK OF COURT

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Bell Helicopter Textron Inc. ) | |
| ) | |
| Plaintiff, ) | **4 - 09 CV - 377 - A** |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| American Eurocopter, LLC and ) | **Jury Trial Demanded** |
| Eurocopter, ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Bell Helicopter Textron Inc. ("Bell Helicopter" or "Plaintiff"), an American helicopter and tiltrotor company headquartered in Fort Worth, Texas for its complaint against Defendants Eurocopter, a French corporation ("Eurocopter") and its subsidiary, American Eurocopter Corp. ("AEC") (collectively, "Eurocopter Entities" or "Defendants"), by and through their undersigned attorneys, state and allege as follows:

## INTRODUCTION

1.      Bell Helicopter is a pioneer in helicopter aviation and brings this suit to defend the 429 helicopter ("the Bell 429"), which is quite possibly the most advanced light twin instrument flight rules (IFR) helicopter ever created. Without any warning, Eurocopter filed suit in Canada alleging that the landing gear on the Bell 429 infringes a Canadian patent. More recently, in a thinly veiled attempt to disrupt Bell Helicopter's exhibition at the industry's largest trade show in Paris, Eurocopter showed up unannounced at Bell Helicopter's exhibition to execute a seizure order based on a French patent.

2.    Bell Helicopter believes that Eurocopter's allegations have no merit and brings this suit against Eurocopter's corresponding U.S. patent to prove that the landing gear on the Bell 429 does not infringe any valid patent claim and to recover damages for Eurocopter's interference with Bell Helicopter's property rights. Bell Helicopter is a leader in helicopter research and development, which has resulted in numerous patents to its credit over the years. Bell Helicopter looks forward to the Bell 429's certification in the United States shortly and to delivering the Bell 429 to the many customers who eagerly anticipate its arrival.

## PARTIES

3.    Plaintiff Bell Helicopter is a corporation organized under the laws of the State of Delaware having a principal place of business at 600 E. Hurst Blvd (State Highway 10), Fort Worth, TX 76053, within this district.

4.    Bell Helicopter, a wholly owned subsidiary of Textron Inc., is an American helicopter and tiltrotor company.

5.    Bell Helicopter is a pioneer in helicopter aviation. It was founded on July 10, 1935 as Bell Aircraft Corporation, focusing on designing and building of fighter aircraft. In 1941, Bell began its first foray into helicopter research and development and soon developed the Bell 30, its first full-size helicopter. Soon thereafter Bell developed the Bell 47, the first helicopter rated by a civil aviation authority in the world, and the Bell 47 became a civilian and military success.

6.    Textron purchased Bell Aerospace in 1960. The helicopter division was renamed as Bell Helicopter Company and in a few years, with the success of the UH-1 during the Vietnam War, it established itself as the largest division of Textron. In January 1976, Textron changed the name of the company to Bell Helicopter Textron. Bell Helicopter has since grown to become

a pioneering industry leader in vertical-lift aircraft and has delivered more than 35,000 aircraft to customers around the world.

7.    Bell Helicopter employs some 5,000 employees in this judicial district.

8.    Upon information and belief, Defendant AEC is a privately held subsidiary of Eurocopter with its principal place of business at 2701 Forum Drive, Grand Prairie, Texas 75052, within this district.  Upon information and belief, Eurocopter is a 60% majority-owner of AEC.

9.    Upon information and belief, Defendant Eurocopter is a corporation constituted under French law, with its principal place of business at Marseille International Airport – Provence 13725 Marignane – Cedex, France.

10.    Upon information and belief, Eurocopter is a subsidiary owned 100% by EADS (European Aeronautic, Defense and Space Company), one of the three largest aerospace groups in the world.

11.    Upon information and belief, Eurocopter does business in the United States through its majority-owned subsidiary of AEC, headquartered in Grand Prairie, Texas.  Upon information and belief, AEC provides distribution of Eurocopter products and services, helicopter assembly and customization, fleet support, and is the Eurocopter Logistic Hub in America.

## NATURE OF THE ACTION

12.    This is an action for declaratory judgment that Bell Helicopter does not infringe U.S. Patent No. 5,860,621 (the "'621 patent"), that the '621 patent is invalid, and that Eurocopter has tortiously interfered with Bell Helicopter's peaceful use and enjoyment of property rights.  A true and correct copy of the '621 patent is attached as Exhibit A.

13.    Upon information and belief, Eurocopter is the lawful assignee of all right, title and interest in the '621 patent.

14.    There is an actual and justiciable controversy, as alleged herein.

## JURISDICTION AND VENUE

15.    These claims rise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and the common law of the State of Texas.

16.    Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202.

17.    This Court has personal jurisdiction over Defendants because Eurocopter, through its subsidiary AEC, and AEC itself are doing business in this judicial district by, among other things, offering their products and services to customers, business affiliates, and government entities located in this judicial district. Upon information and belief, AEC manufactures and assembles several models of helicopters in the United States at its Grand Prairie, Texas plant including at least two models that embody the claims of the '621 patent. In addition, AEC has a principal place of business in this district. Furthermore, acts giving rise to the claims herein have been purposefully directed at Bell Helicopter and threaten Bell Helicopter's operations in this judicial district.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 1400(b) because Bell Helicopter, which has a regular and established place of business in this district, offers for sale the Bell 429 helicopter in this judicial district, and because Defendants are subject to personal jurisdiction in this district because they are doing business within this district and are causing injury to Bell Helicopter in this judicial district.

## BACKGROUND OF THE CONTROVERSY

19.     Bell Helicopter and Eurocopter are the two largest distributors of commercial

helicopters in the world, and they directly compete for the same base of potential customers.  The

largest market for helicopters is the United States, where approximately 50% of all commercial

helicopters are operated.  Eurocopter services the U.S. market through its domestic affiliate,

AEC.  Both AEC and Bell Helicopter have their principal places of business in Tarrant County,

Texas.  The principal marketing offices of AEC and Bell Helicopter are located in Tarrant

County, Texas and the competitive business relationship between the two companies is centered

in Tarrant County, Texas.

20.     Upon information and belief, Eurocopter is the owner by assignment of the U.S.

'621 patent, French Patent No. FR 9,607,156 (the "French '156 patent") (Exh. B), and Canadian

Patent No. 2,207,787 (the "Canadian '787 patent") (Exh. C) (hereinafter, collectively the

"Landing Gear Patents").  The Landing Gear Patents contain substantially identical disclosures

and each makes a claim of priority to the French '156 patent.  The Landing Gear Patents are

directed to helicopter landing gear with skids, particularly for light helicopters.

21.     Eurocopter has aggressively enforced its foreign patents corresponding to the U.S.

'621 patent against Bell Helicopter through an infringement suit in Canada and a seizure in

France.

### Eurocopter's Patent Infringement Suit in Canada

22.     Bell Helicopter manages a sister company in Canada, Bell Helicopter Textron

Canada Limited ("Bell Helicopter Canada").

23.     On May 9, 2008, Eurocopter and Eurocopter Canada Limited filed a legal action

in Canada alleging, among other things, that Bell Helicopter Canada manufactures, distributes,

uses, imports, offers for sale or sells in Canada the Bell 429 outfitted with a landing gear which

allegedly infringes the Canadian '787 patent. Specifically, Eurocopter and Eurocopter Canada Limited alleged that the Bell 429's landing gear infringes at least claims 1, 7, 14 and 15 of the '787 Canadian patent. An English version of the Canadian complaint filed by Eurocopter and Eurocopter Canada Limited is attached as Exhibit D.

24.     The Canadian '787 patent asserted by Eurocopter is a Canadian counterpart of the U.S. '621 patent.

25.     The asserted claims of the Canadian '787 patent and the claims of the U.S. '621 patent both relate to helicopter landing gear with skids having a particular configuration.

26.     The Bell 429 is a helicopter designed and manufactured by Bell Helicopter Canada primarily for commercial use. The first Bell 429 prototypes were made in 2006 with a "first flight" being completed in February of 2007.

27.     The advantages of the Bell 429 include its ability to perform in all conditions including high altitudes and hot climates, the ability to be used for a variety of commercial applications, such as corporate transit or Emergency Medical Services (EMS), and its ability to accommodate a larger number of passengers and cargo than other helicopters in its class.

28.     The skids subject to Eurocopter's claims of infringement were built in the United States, and will be manufactured entirely in the United States for production units by an indirect wholly owned subsidiary of Bell Helicopter.

29.     Upon information and belief, Eurocopter seeks several different forms of relief from the Canadian Court, including but not limited to:

•   An order of interlocutory and permanent injunction directing Bell Helicopter Canada to cease infringing any claim of the Canadian '787 patent;

• Cease manufacturing, outsourcing for manufacture, distributing, using, importing, providing for sale or selling the landing gear or any portion of the landing gear which forms the subject of the invention described and claimed in the Canadian '787 patent, or any helicopter equipped with such landing gear;

• Cease promoting the Bell 429 aircraft indicating directly or indirectly, expressly or implicitly, that the landing gear is a Bell Helicopter innovation; and

• An order condemning Bell Helicopter Canada to punitive damages in the amount of $25,000,000.

### Eurocopter's Seizure Action in France

30.    Eurocopter also recently filed a petition before the Civil Court of Paris, France for an infringement seizure regarding invention patent against both Bell Helicopter and Bell Helicopter Canada. Eurocopter alleged that the Bell 429 manufactured abroad and imported, offered for sale, or sold in France infringes its French '156 patent. A copy of Eurocopter's petition is attached as Exhibit E. An English translation of the petition is attached as Exhibit F.

31.    Eurocopter requested an order of seizure based on alleged infringement of claims 1-5 and 8-12 of its French '156 patent.

32.    The French '156 patent is a French counterpart of the U.S. '621 patent. The asserted claims of the French '156 patent and the claims of the U.S. '621 patent both relate to helicopter landing gear with skids having a particular configuration.

33.    In exhibits to its petition, Eurocopter identified advertisements for the Bell 429 in a Bell Helicopter brochure and on Bell Helicopter's website as evidence in support of its petition. These exhibits are attached as Exhibit G. Eurocopter specifically identified the fact that the American company Bell Helicopter would show and offer for sale its Bell 429 at an air show

June 15 to 21, 2009, at the Le Bourget airport, located approximately 7 miles north northeast of Paris, France ("the Paris Air Show").

34.    Eurocopter's petition to the Civil Court was misleading. First, Eurocopter claimed that Bell Helicopter was manufacturing and offering for sale an old landing gear design which Eurocopter knew or should have known Bell Helicopter was not in fact manufacturing or offering for sale, and was not representative of the Bell 429 which Bell Helicopter would exhibit at the Paris Air Show. Second, Eurocopter failed to disclose that it was already prosecuting patent infringement litigation in Canada and had the ability to obtain information regarding the Bell 429 landing gear in that litigation, so executing a seizure at Bell Helicopter's presentation at the Paris Air Show was unnecessary.

35.    In support of its petition, Eurocopter included an article about the Bell 429 from Bell Helicopter's April 2008 newsletter. (*See* Exh. G.) This article showed the Bell 429 with an old landing gear design which had been abandoned, and was not present on the Bell 429 at the Paris Air Show. Eurocopter represented that Bell Helicopter was manufacturing and offering for sale this design, even though Eurocopter knew or should have known that this old landing gear design had been replaced with an alternate design. The alternate design had been disclosed to the public and specifically to Eurocopter in the Canadian litigation.

36.    On June 3, 2009, Eurocopter had filed Written Representations (Exh. H) in the Canadian litigation in support of its motion for leave to amend its statement of claim to accuse the alternate design. In its Written Representations, Eurocopter also identified pending discovery in Canada, claiming that information regarding the alternate design was covered by its discovery requests. At a hearing on June 8, 2009, the court in Canada indicated that Eurocopter's motion to amend would be granted and that discovery on its new claims could proceed.

37.     Though Eurocopter knew it already had leave of court in Canada to conduct discovery on this issue, Eurocopter elected to seek a seizure order in Paris based on a misleading petition which omitted these important facts.  Eurocopter further made no attempt to contact Bell Helicopter or its counsel regarding its plan to conduct a seizure.  In addition, Eurocopter made no attempt to arrange inspection of a Bell 429 in a manner which would not severely disrupt Bell Helicopter's exhibition at the Paris Air Show.

38.     Eurocopter's misleading petition to the Civil Court in Paris was an attempt to exploit the French judicial procedure for commercial gain, by disrupting important marketing activities of its American competitor Bell Helicopter.

39.     On June 11, 2009, the Chief Judge of the Civil Court of Paris granted an Order authorizing Eurocopter to have a seizure and searches performed on Bell Helicopter and Bell Helicopter Canada at the Paris Air Show based on Eurocopter's allegations that the Bell 429 infringes its French '156 patent.  On June 16, 2009, a Service of Process of Order for Infringement Seizure issued against Bell Helicopter Canada and Bell Helicopter.  A copy of these Orders is attached as Exhibit I.  An English translation of these Orders is attached as Exhibit J.

40.     A critical aspect of marketing commercial helicopters is the display and demonstration of products at various air shows, and Bell Helicopter commits considerable resources to this effort.  The oldest, largest, and most prestigious air show in the world is the Paris Air Show at Le Bourget Airport in Paris.  This air show is held once every two years and all major aerospace manufacturers attend to demonstrate their products to potential customers.  Major aerospace purchases and product debuts are often announced at the Paris Air Show.

41.     Bell Helicopter's presentation at the Paris Air Show was one of Bell Helicopter's major marketing efforts this year for the Bell 429. Bell Helicopter invested heavily in its presentation for the Paris Air Show, renting a pavilion and shipping a full-size mock up of the Bell 429 and a working prototype aircraft to France. Bell Helicopter scheduled demonstration flights for customers on the prototype aircraft. Senior marketing and engineering personnel from Bell Helicopter's Fort Worth offices traveled to the Paris Air Show to participate in the presentation.

42.     On June 16, 2009, patent counsel and a bailiff, acting on behalf of Eurocopter ("Eurocopter's agents"), showed up at Bell Helicopter's booth at the Paris Air Show and ordered Bell Helicopter's employees to allow them to photograph the exhibit and to turn over documents relating to the Bell 429's skid gear. Eurocopter's agents collected three business documents published by Bell Helicopter regarding its Bell 429. Eurocopter's agents were then transported to the heliport twice to inspect a Bell 429 which is the property of Bell Helicopter, first after it returned from a flight and later after portions were disassembled for the bailiff to inspect the landing gear. Scheduled flight demonstrations were interrupted and ultimately suspended for a portion of the day to allow Eurocopter's agents to inspect the Bell 429. A copy of the bailiff's Seizure Report is attached as Exhibit K. An English translation of the bailiff's Seizure Report is attached as Exhibit L.

43.     These intrusive actions conducted at Eurocopter's request were highly disruptive to Bell Helicopter's exhibition and significantly impeded Bell Helicopter's ability to conduct business. A Reuters press release about seizure at the Paris Air Show is attached as Exhibit M.

44.     Bell Helicopter understands that this seizure may be the precursor of an imminent patent infringement complaint based on the French '156 patent against Bell Helicopter in France.

**The Immediate, Concrete and Substantial Controversy in the United States**

45.    Bell Helicopter Canada is close to obtaining U.S. certification on the Bell 429, which is being marketed through Bell Helicopter. Eurocopter and AEC are competing aggressively with Bell Helicopter for potential customers, offering certain of their older models, but the market response to the Bell 429 has been very strong. The Bell 429 represents a major competitive challenge for Eurocopter and AEC, particularly with regard to U.S. commercial sales.

46.    The landing gear for the Bell 429 is built in the United States and Bell Helicopter offers to sell the Bell 429 in the United States. Bell Helicopter currently has agreements with customers eager to purchase its Bell 429 when it becomes commercially available upon certification. Bell Helicopter fully intends to have the landing gear for the Bell 429 manufactured in the United States by its indirect wholly owned subsidiary in commercial quantities, continue offering to sell the Bell 429 in the United States, import the Bell 429 into the United States, and sell the Bell 429 in United States.

47.    There is an immediate, concrete, and substantial controversy between Eurocopter and Bell Helicopter about whether the landing gear on the Bell 429 infringes any valid patent right possessed by Eurocopter. In view of Eurocopter's aggressive acts in suing in Canada for alleged infringement of the Canadian '787 patent and executing a seizure against Bell Helicopter in France for alleged infringement of the French '156 patent, Bell Helicopter has every reason to fear potential assertion of the counterpart U.S. '621 patent in the United States. Bell Helicopter has been placed in the position where it must either abandon its lawful rights to make the landing gear for its Bell 429 in the United States, and to offer to sell and sell in the United States, and import into the United States the Bell 429, or else risk prosecution.

48.    Eurocopter's seizure executed against Bell Helicopter at the Paris Air Show—the largest air show in the industry—on June 16, 2009, illustrates Eurocopter's intention to disrupt Bell Helicopter's legitimate business interests.  Bell Helicopter brings this action for a declaratory judgment to remove the cloud of uncertainty that currently hangs over it regarding the '621 patent, and to protect its substantial investment in its Bell 429 against Eurocopter's timing a patent infringement suit to try to maximize the disruption to Bell Helicopter's business, e.g., by filing it to coincide with certification in the United States.

## COUNT I

### Declaratory Judgment of Non-Infringement, United States Patent No. 5,860,621

49.    Bell Helicopter repeats and incorporates by reference each of the foregoing paragraphs of its Complaint.

50.    An actual and justiciable case or controversy exists between Defendants and Bell Helicopter concerning alleged infringement of the '621 patent, which requires a declaration of rights by this Court.

51.    The Bell 429 helicopter as a whole, and its landing gear specifically, has not and does not infringe any valid and enforceable claim of the '621 patent.

52.    Bell Helicopter is entitled to a declaratory judgment that the manufacture, use, offer for sale, sale in the United States or importation into the United States of the Bell 429 helicopter as a whole, and its landing gear specifically, does not infringe any valid and enforceable claim of the '621 patent.

## COUNT II

### Declaratory Judgment of Invalidity, United States Patent No. 5,860,621

53.    Bell Helicopter repeats and incorporates by reference each of the foregoing paragraphs of its Complaint.

54.     An actual and justiciable case or controversy exists between Defendants and Bell Helicopter concerning the invalidity of the '621 patent, which requires a declaration of rights by this Court.

55.     One or more claims of the '621 Patent is invalid for failure to meet the requirements of patentability under at least 35 U.S.C. §§ 102, 103, and/or 112.

56.     Bell Helicopter is entitled to a declaratory judgment that the '621 patent is invalid.

## COUNT III

### Tortious Interference with Peaceful Use and Enjoyment of Property Rights

57.     Bell Helicopter repeats and incorporates by reference each of the foregoing paragraphs of its Complaint.

58.     Bell Helicopter entered into contracts and invested heavily in the creation of its exhibit at the Paris Air Show.  Bell Helicopter's contracts with the sponsors of the show gave it the exclusive right to occupy exhibition space and use it for the marketing of Bell Helicopter's products, free from interference by competitors such as Eurocopter.

59.     Bell Helicopter had only one Bell 429 prototype available for customer demonstration at the Paris Air Show, and flight time was heavily in demand.  Bell Helicopter incurred significant cost bringing the Bell 429 prototype to Paris.

60.     Eurocopter, individually and on behalf of AEC, engaged in wrongful and tortious conduct to interfere with Bell Helicopter's property rights.  Specifically, Eurocopter maliciously obtained a seizure order in order to gain access to Bell Helicopter's exhibit and disrupt Bell Helicopter's marketing efforts during the Paris Air Show, and to cause Bell Helicopter to cancel demonstration flights for the Bell 429.  In seeking the seizure order, Eurocopter presented misleading information.

61.     Bell Helicopter suffered special damages as a result of Defendants' conduct. Bell Helicopter's exhibit was forcefully occupied by Eurocopter's agents, and Bell Helicopter's marketing efforts were seriously disrupted and demonstration flights were canceled.

62.     Bell Helicopter is therefore entitled to recover damages from Defendants resulting from the actions of Eurocopter's agents. Bell Helicopter lost at least one of the four days of the show set aside exclusively for attendance by potential customers, and the show will not be repeated until 2011. At a minimum, Bell Helicopter is entitled to recover an amount equal to no less than 25% of the cost Bell Helicopter incurred to participate in the Paris Air Show, including but not limited to the cost to rent and decorate its exhibit, the cost to transport personnel to the Paris Air Show and house them, and the cost to transport the Bell 429 mock-up and prototype to the Paris Air Show.

63.     The tortious conduct of Defendants was intentional, and Bell Helicopter is therefore also entitled to an award of exemplary damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bell Helicopter requests the following relief, and prays that the Court:

A.     Declare that Bell Helicopter has not infringed and that its planned activities will not infringe any valid and enforceable claim of U.S. Patent No. 5,860,621;

B.     Declare that the claims of U.S. Patent No. 5,860,621 are invalid;

C.     Enjoin Defendants, and their officers, directors, agents, counsel, servants, and employees and all persons in active concert or participation with any of them, from attempting to enforce the '621 Patent against Bell Helicopter or any customer of Bell Helicopter by reason of such customer's use of Bell Helicopter's products;

D.    Award Bell Helicopter consequential, special, and exemplary damages for Defendants' tortious interference with Bell Helicopter's peaceful use and enjoyment of property rights;

E.    Award Bell Helicopter its costs;

F.    Find this an exceptional case under 35 U.S.C. § 285 and award Bell Helicopter its attorneys' fees and expenses; and

G.    Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Bell Helicopter demands a trial by jury as to all matters triable to a jury.

Dated: June 29, 2009                    Respectfully submitted,

John G. Sams (jsams@browndean.com)
Texas Bar No. 17566100
Stephen C. Howell (showell@browndean.com)
Texas Bar No. 10107700
W. Beale Dean (bdean@browndean.com)
Texas Bar No. 05685000
BROWN, DEAN, WISEMAN, PROCTOR, HART
& HOWELL, LLP
306 W. 7th Street
Suite 200
Fort Worth, TX 76102
Tel: (817) 332-1391
Fax: (817) 870-2427

%JS 44 (Rev. 12/07) ORIGINAL **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Bell Helicopter Textron Inc. | American Eurocopter LLC<br>Eurocopter |
| **(b)** County of Residence of First Listed Plaintiff  Tarrant<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant  Tarrant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>John Sams, Stephen Howell, Beale Dean; Brown Dean, 306 W. 7th<br>Street, Suite 200, Fort Worth, TX  76102; (817) 332-1391 | Attorneys (If Known)<br>4-09 CV-377-A |

*RECEIVED JUN 29 2009 ... DISTRICT OF TEXAS* (stamp)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☒ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  35 USC § 100 et seq.
Brief description of cause:
Suit for declaration of non-infringement of patent; Suit for damages for tortious interference

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):  JUDGE ____  DOCKET NUMBER ____

DATE  6/29/09    SIGNATURE OF ATTORNEY OF RECORD  John Sams

**FOR OFFICE USE ONLY**

RECEIPT # FW8925    AMOUNT ____    APPLYING IFP ____    JUDGE  A    MAG. JUDGE ____

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

## Civil Filing Notice - Fort Worth Division

---

**CIVIL ACTION NO:** _____ **4 - 09 CV - 377 - A** _____

This case has been assigned to District Judge: _____

(Complete if applicable)
TRANSFERRED FROM: _____    DATE FILED: _____

---

Civil cases are assigned to a judge by random draw. A docket clerk for each judge maintains the recording of documents filed with the Clerk. A complete list of phone numbers for both the judges' chambers and the docket clerks is provided.

| Judge | Court Settings | Pleadings Filed |
|---|---|---|
| (A)  Judge John H. McBRYDE | (817)850-6650 | (817)850-6611 |
| Even Cases: 850-6652   Odd Cases: 850-6653 | | |
| (Y)  Judge Terry R. MEANS | (817)850-6673 | (817)850-6612 |
| (BE) Magistrate Judge Charles BLEIL | (817)850-6690 | (817)850-6697 |

For access to local rules, attorney admission information, frequently asked questions, common forms, filing instructions, and records information, please visit our web site at **www.txnd.uscourts.gov**. To speak to someone in the district clerk's office, please call (817) 850-6601.

To receive electronic access to court docket sheets and filed documents, contact the PACER Service Center at **www.pacer.pcs.uscourts.gov** or by phone at 1-800-676-6856 for a log-in and password.