

A
ORIGINAL

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Bell Helicopter Textron Inc. and<br>Textron Innovations Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>American Eurocopter, LLC and<br>Eurocopter,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 4:09-cv-377-A

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR MISJOINDER OF PARTIES

### TABLE OF CONTENTS

I.  INTRODUCTION .........................................................................................................1

II.  FACTUAL BACKGROUND ........................................................................................3

III.  ARGUMENT ................................................................................................................6

    A.  This Court has Specific Personal Jurisdiction over Eurocopter on the
    Declaratory Judgment Claims....................................................................................6

        1.  Specific Jurisdiction Exists Because Eurocopter has an Exclusive
        Distributor in this District, AEC, and Has Aggressively Enforced
        its Corresponding Foreign Patents .............................................................. 6

        2.  Exercising Personal Jurisdiction over Eurocopter Here Comports
        With Fair Play and Substantial Justice....................................................... 11

    B.  Even Assuming *Arguendo* that this Court does not have Specific
    Jurisdiction over Eurocopter on the Declaratory Judgment Claims, at
    Minimum Discovery Should be Granted on the Issue of General
    Jurisdiction.................................................................................................................13

    C.  Venue is Proper in this District for the Declaratory Judgment Claims..................16

D.    The Affirmative Patent Infringement Claim is Properly Before this Court, Bell Helicopter is a Proper Co-Plaintiff on that Claim, and it Should Not be Severed ...................................................................................................17

    1.    Bell Helicopter has Always been a Proper Co-Plaintiff and Now Its Status as a Co-Plaintiff is Indisputable ...................................................... 18

    2.    There is No Rational Basis to Sever the Claim for Infringement of the '242 Patent from the Declaratory Judgment Claims ........................... 18

E.    Plaintiffs Have Properly Alleged Willful Infringement.........................................21

IV.    CONCLUSION............................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                    **PAGE(S)**

*3M Innovative Prop. Co. v. InFocus Corp.*, No. 04-0009, 2005 U.S. Dist. LEXIS 2381
   (D. Minn. Feb. 9, 2005) ...............................................................................15

*Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995)....................................18

*Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) ........................................................6

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................21, 22, 23

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ........................................................21, 22

*Bounty-Full Enter., Inc. v. Forever Blue Enter. Grp.*, 923 F.Supp. 950 (S.D. Tex. 1996) ...........16

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006) ................12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77 (1985) ......................................11

*Campbell Pet Co. v. Maile*, 542 F.3d 879 (Fed. Cir. 2008)....................................6, 8, 11

*Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338 (D. Del. Apr. 3, 2009) ..................15

*Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994) ........................................16

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d
   357, 362 (3d Cir. 1983)...............................................................................14

*Construcciones Integrales Del Carmen, SA. de C.V. v. Goodcrane Corp.*, No. H-08-3427,
   2009 WL 1883928 (S.D. Tex. June 30, 2009) ..............................................13, 14

*Dainippon Screen Mfg Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998)........................16

*Eli Lilly and Co. v. Sicor Pharm., Inc.*, No. 1:06-cv-238-SEB-JMS, 2007 U.S. Dist.
   LEXIS 31657 (D. Ind. Apr. 27, 2007) .........................................................15

*Fotomedia Techs., LLC v. AOL, LLC*, No. 2:07cv255, 2008 WL 4135906 (E.D.
   Tex. Aug. 29, 2008) .................................................................................22, 23

*Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993)....................................19

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997)................6, 7, 8, 9

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ........................................21, 22, 23

*Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926) ........................18, 19

*IP Innovations, LLC v. RealNetworks, Inc.*, 310 F. Supp. 2d 1209 (W.D. Wash. Mar. 12, 2004) ............................................................................................................................16

*Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219 (D.N.J. 1966)........................12, 17

*Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed. Cir. 1990) ................................................18

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci., Inc.*, No. C03-1324C, 2003 U.S. Dist. LEXIS 17153 (W.D. Wash. Aug. 26, 2003) ...........................................................20

*Lowrey v. Texas A & M University Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) ...............................22

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000)..............................14, 15

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)..................................................9

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009)................................14

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996).......................14

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 n.4 (Fed. Cir. 2007) .............................22

*Pro Sports Inc. v. West*, 639 F.Supp.2d 475 (D.N.J. 2009) ............................................16

*QRG, Ltd. v. Nartron Corp.*, No. 06-500, 2006 U.S. Dist. LEXIS 64121 (W.D. Penn. Sept. 7, 2006) ...................................................................................15

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007).....................9, 10, 19

*Southern Construction Co. v. Pickard*, 371 U.S. 57 (1962) ...........................................19

*State Farm Fire & Casualty Co. v. Miraglia*, No. 4:07-CV-013-A, 2007 WL 2963505 (N.D. Tex. Oct. 11, 2007) .......................................................................6, 8

*Stein Assoc., Inc. v. Heat and Control, Inc.*, 748 F.2d 653 (Fed. Cir. 1984)..............................10

*Teva Pharms. USA, Inc. v. Abbott Labs.*, 301 F. Supp. 2d 819 (N.D. Ill. 2004) ..........................9

*Velcro Grp. Corp. v. Billarant*, 692 F.Supp. 1443 (D.N.H. 1988) ......................................17

*Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007) .................................................10

*Weinar v. Rollform Inc.*, 744 F.2d 797 (Fed. Cir. 1984)................................................18

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186 (D. Del. Oct. 25, 1993) .........................................................................................15

## STATUTES

28 U.S.C. § 1391 ...................................................................................................................16, 17

28 U.S.C. § 1400(b) ....................................................................................................................16

35 U.S.C. § 293 ...........................................................................................................................12

## RULES AND REGULATIONS

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................21

Federal Rule of Civil Procedure 20 ............................................................................................18

Federal Rule of Civil Procedure 8(a) ..........................................................................................22

## I.   <u>INTRODUCTION</u>

Plaintiffs Bell Helicopter Textron Inc. ("Bell Helicopter") and Textron Innovations Inc. ("Textron Innovations") hereby oppose Defendants' Motions to Dismiss and for Misjoinder of Parties.

This suit involves disputes between the two largest distributors of commercial helicopters, Bell Helicopter and Eurocopter, about whether landing gear on some of their respective helicopters infringes each other's patents.  That controversy is centered in this judicial district, where both Bell Helicopter and Eurocopter's exclusive U.S. distributor, American Eurocopter, LLC ("AEC"), are located and employ thousands of people.  Defendants' motion is an attempt to avoid having this Court adjudicate Eurocopter's patent rights based on legally unjustifiable procedural maneuvering, which would result in a multiplication of lawsuits in different jurisdictions and thus needless inefficiency.  Plaintiffs respectfully request that this Court reject Defendants' attempt, and instead allow this case to move forward expeditiously.

The fundamental basis for Defendants' motion is an erroneous argument that this Court lacks personal jurisdiction over Eurocopter on some, but not all, claims—the claims for declaratory judgment of non-infringement and invalidity of Eurocopter's U.S. Patent No. 5,860,621 (the "'621 patent"), Counts I and II of the Second Amended Complaint.  This Court has specific personal jurisdiction over Eurocopter on these claims at least because Eurocopter has an exclusive distributor in this district, AEC, and has directly threatened Bell Helicopter's commercial activities in this district based on the '621 patent.  This alone satisfies the constitutional requirements for asserting personal jurisdiction over Eurocopter on these declaratory judgment claims.

To argue against personal jurisdiction, Eurocopter avoids addressing the applicable law, and instead relies on cases about attempts to adjudicate foreign patents in the United States.  Bell

Helicopter is not asking this Court to adjudicate foreign patents. Bell Helicopter is seeking declarations that it does not infringe Eurocopter's *U.S.* '621 patent and that this *U.S.* patent is invalid. Eurocopter's aggressive actions against Bell Helicopter based on Eurocopter's foreign patents corresponding to its U.S. patent are relevant to jurisdiction as a matter of both logic and law. Indeed, Eurocopter does not contest that those actions sufficiently threatened Bell Helicopter to support subject matter jurisdiction under the Declaratory Judgment Act. Eurocopter only contends that the declaratory judgment claims should be litigated in the District of Columbia, which has no interest in this dispute, rather than in this district, which has the greatest interest in resolving this dispute. Furthermore, venue would be legally proper in this district even if it were not the most sensible district to hear this dispute; it is all the more appropriate because relevant parties, people, and documents are located here.

At bottom, Eurocopter simply does not want this Court to adjudicate Counts I and II regarding Eurocopter's '621 patent, not because it would be more convenient to litigate in the District of Columbia or that it would make more sense to litigate there given the interests at stake—neither is true. Eurocopter does not dispute that it will need to defend itself in this district against Count III, the affirmative claim for infringement of U.S. Patent No. 5,462,242 (the "'242 patent"), which also relates to helicopter landing gear. Yet, Eurocopter and AEC ask this Court to sever Count III, which will be litigated here, and allow Counts I and II to be litigated in the District of Columbia. This inefficient approach is not only insensible, but also devoid of legal support.

Even assuming (contrary to fact) that Bell Helicopter has not established specific jurisdiction over Eurocopter on the declaratory judgment claims, Bell Helicopter should be allowed to take expedited discovery on the issue of general jurisdiction. Eurocopter and its

predecessors have had a relationship with this district for decades, and Bell Helicopter should be permitted to investigate, these issues relevant to assessing whether Eurocopter has had continuous and systematic contacts with this district.

Furthermore, Textron Innovations and Bell Helicopter *must be* co-plaintiffs under controlling law, so Defendants' contention that they have been misjoined is incorrect. In addition, with regard to Defendants' request that the Court dismiss the allegation of willful infringement, this allegation is consistent with the well-established pleading requirements in patent cases and is certainly plausible. The evidence relating to this allegation is in Defendants' possession, and discovery should be permitted accordingly.

## II.     FACTUAL BACKGROUND

Bell Helicopter and Eurocopter are the two largest distributors of commercial helicopters in the world, and the competitive relationship between them in the United States is centered in this district. *See* Second Amended Complaint ("2nd Am. Compl."), Dkt. No. 29, ¶ 27. Bell Helicopter is located in this district and has about 5,000 employees in this district. *See id.* ¶¶ 4, 8, 27. AEC is also located in this district, has 700 employees in this district, and is the exclusive distributor of Eurocopter's products in the United States, including at least two models of helicopters that embody the claims of the '621 patent. *See id.* ¶¶ 11, 13, 25, 27. AEC is managed by Eurocopter, which is incorporated and located in France. *See id.* ¶¶ 14-15.

Eurocopter owns a family of closely related patents on helicopter landing gear, including the U.S. '621 patent, Canadian Patent No. 2,207,787 (the "Canadian '787 patent"), and French Patent No. 9,607,156 (the "French '156 patent"). *See id.* ¶ 28. These patents contain substantially identical disclosures, and the U.S. and Canadian patents claim priority to the French patent. *See id.* In May 2008, Eurocopter sued Bell Helicopter's Canadian sister company, Bell Helicopter Textron Canada Limited ("Bell Helicopter Canada"), alleging that the landing gear

3

skids on the Bell 429 helicopter infringed the Canadian '787 patent. *See id.* ¶¶ 31-32. Those skids are being manufactured in the United States for production by an indirect wholly owned subsidiary of Bell Helicopter. *See id.* ¶ 37.

The parties had been litigating the Canadian suit for about a year when Eurocopter decided to take further aggressive action directly against Bell Helicopter in June 2009. While Bell Helicopter was preparing for its exhibition and demonstration at the most significant trade show in the industry, held once every two years outside Paris, France ("Paris Air Show"), Eurocopter was preparing to disrupt Bell Helicopter's exhibition and demonstration based on its French '156 patent. *See id.* ¶¶ 39-42, 49. Eurocopter's purported basis for this disruption was a need for discovery, but Eurocopter already knew it would be able to obtain such discovery in the Canadian litigation. *See id.* ¶¶ 45-46; 2ⁿᵈ Am. Compl., Ex. F. Eurocopter did not tell the French court about the Canadian litigation or contact Bell Helicopter about its desire to take discovery in connection with Bell Helicopter's exhibition and demonstration at the Paris Air Show. *See id.* ¶¶ 45-46. Instead, on June 16, 2009, patent counsel and a bailiff, acting on behalf of Eurocopter, executed a surprise seizure order based on Eurocopter's French '156 patent, severely disrupting Bell Helicopter's exhibition and demonstration. *See id.* ¶¶ 51-52.

At the time of the Paris Air Show, Bell Helicopter knew that certification of its 429 helicopter by the Federal Aviation Administration (FAA) was imminent and therefore that Bell Helicopter would soon be able to deliver it to customers. *See* Original Complaint, Dkt. No. 1, ¶ 45. After Eurocopter's aggressive actions in France, Bell Helicopter anticipated that Eurocopter would file suit against Bell Helicopter based on its U.S. '621 patent as soon as certification was granted, once again to maximize disruption of Bell Helicopter's commercial activities. *See id.* ¶ 48. To protect its business and its customers, Bell Helicopter filed this action on June 29, 2009,

two days before receiving FAA certification. *See generally id.*; 2nd Am. Compl. ¶ 54. Eurocopter then sued Bell Helicopter in France alleging infringement of Eurocopter's French '156 patent. 2nd Am. Compl. ¶ 53.

After filing the present action, Plaintiffs determined that Eurocopter and AEC have been using helicopter landing gear which appears to infringe the '242 patent. Plaintiffs added a claim for infringement of this patent in its first amended complaint. *See* First Amended Complaint, Dkt. No. 25, ¶¶ 3, 15, 27, 70-74. Plaintiffs offered Defendants an extension of its deadline for responding to the original complaint to address this development, but Eurocopter refused it and proceed to file motions that ignored this development. *See* Ex. A, Letter from John Sams, Counsel for Plaintiffs, to Tom Yoxall, Counsel for Defendants (Sept. 15, 2009); AEC's Motion to Dismiss, Dkt. No. 17; Eurocopter's Motion to Dismiss, Dkt. No. 20. Since it made no sense for Plaintiffs to respond to these motions (which were obsolete when filed) and since there would have been overlapping schedules for responses to the motions and to the first amended complaint, Plaintiffs' counsel contacted Defendants' counsel to set a rational sequence for raising disputed issues to the Court. Defendants agreed that their then-pending motions should be dismissed as moot. *See* Order, Dkt. No. 28. In view of Defendants' representations in connection with those motions that AEC was not an exclusive licensee of the '621 patent and that Bell Helicopter could pursue its tortious interference claim in France, Plaintiffs agreed to file a second amended complaint voluntarily dismissing the declaratory judgment counts as to AEC and the tort count as to both defendants. *See* Agreed Motion Regarding Filing of a Second Amended Complaint and Scheduling, Dkt. No. 27.

III.   **ARGUMENT**

A.   **This Court has Specific Personal Jurisdiction over Eurocopter on the Declaratory Judgment Claims**

1.   Specific Jurisdiction Exists Because Eurocopter has an Exclusive Distributor in this District, AEC, and Has Aggressively Enforced its Corresponding Foreign Patents

Eurocopter concedes that the reach of the Texas long-arm statute is coextensive with the limits of due process, and that Federal Circuit precedent governs the jurisdictional inquiry regarding Bell Helicopter's declaratory judgment claims. *See* Brief in Support of Motions to Dismiss and for Misjoinder of Parties ("Defs. Br."), Dkt. No. 32, at 4-5; *accord Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) (applying Federal Circuit law to assess personal jurisdiction in the context of declaratory judgment claims of non-infringement, invalidity, and unenforceability); *State Farm Fire & Casualty Co. v. Miraglia*, No. 4:07-CV-013-A, 2007 WL 2963505, at *2 (N.D. Tex. Oct. 11, 2007) (McBryde, J.) (recognizing that the Texas long-arm statute extends to the limits of due process). "That inquiry involves consideration of three factors:  whether the defendant purposefully directed its activities at residents of the forum, whether the claim arises out of or relates to the defendant's activities within the forum, and whether assertion of personal jurisdiction is reasonable and fair." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997).   In making this inquiry, Bell Helicopter's factual assertions must be accepted as true and factual conflicts must be resolved in Bell Helicopter's favor, unless and until this Court decides that an evidentiary hearing is needed (after appropriate discovery). *See Campbell Pet Co. v. Maile*, 542 F.3d 879, 888 (Fed. Cir. 2008); *State Farm*, 2007 WL 2963505, at *1.

The Federal Circuit has held that exercising personal jurisdiction over an out-of-state patent holder satisfies due process where the patent holder (1) has sent cease-and-desist letters to the plaintiff and (2) has an exclusive distributor that does business which involves patented

products in the state. *See Genetic Implant*, 123 F.3d at 1459 ("Entering into an exclusive distributorship agreement authorizing the distribution of its trademarked and patented products in Washington is sufficiently analogous to entering into a patent license agreement, which we have previously concluded is a sufficient contact, in combination with cease-and-desist letters, to comply with the requirements of due process."). In *Genetic Implant*, plaintiff Genetic Implant was located in Washington and brought declaratory judgment claims of non-infringement and invalidity in Washington against the out-of-state patent holder, Core-Vent. *See id.* at 1456. Core-Vent had an exclusive distribution agreement with an out-of-state distributor Dentsply. *See id.* Dentsply had made substantial sales of Core-Vent products in Washington, including products covered by the patent which was the subject of the declaratory judgment claims. *See id.* The Federal Circuit found Core-Vent's exclusive distribution agreement with Dentsply to be "most significant." *See id.* at 1458. Based on this fact and the fact that Core-Vent had sent cease-and-desist letters to Genetic Implant, the Federal Circuit reversed the district court and held that exercise of personal jurisdiction over Core-Vent was proper. *See id.* at 1459.

The basis for personal jurisdiction over Eurocopter here is at least as strong as the basis for jurisdiction over Core-Vent in *Genetic Implant*. In *Genetic Implant*, there was only an out-of-state exclusive distributor doing business in-state with respect to the patented products. Here Eurocopter's exclusive distributor, AEC, is located in-state, indeed in this very judicial district. *See* 2nd Am. Compl. ¶¶ 11, 13, 27. Eurocopter's own website identifies AEC as the distributor for the "Territory" of the "United States," and Eurocopter's map of subsidiaries and participations throughout the world identifies no other U.S. company. *See id.*, Ex. R (Eurocopter Subsidiaries web page for AEC) & Ex. S (Eurocopter Subsidiaries web page). Eurocopter has presented no evidence to controvert that AEC is Eurocopter's exclusive distributor in the United

States. The portion of its Distributor and Service Center Agreement with AEC which Eurocopter submitted as an exhibit, Section A, only addresses "General Clauses." Eurocopter did not provide the other sections of the agreement addressing the nature of the commercial relationship. However, Plaintiffs note that Section A sets the foundation for an exclusive relationship for the "Territory" of the United States: "In case of exclusivity, Eurocopter undertakes, during the term of this Agreement, not to allow any of its other authorized commercial representatives or distributors, whichever applies, to seek Customers for the Commodities in the Territory where AE LLC has exclusive rights." *See* Ex. A to Arfi Declaration, Appendix in Support of Defendants' Motion to Dismiss, Dkt. No. 30, at 6. Regardless, at this stage Bell Helicopter's assertion that AEC is the exclusive distributor of Eurocopter's products in the United States must be accepted as true, and any dispute on this issue must be resolved in Bell Helicopter's favor. *See Campbell Pet Co.*, 542 F.3d at 888; *State Farm*, 2007 WL 2963505, at *1.

Furthermore, there can be no dispute that AEC offers the patented products for sale in this judicial district, as AEC offers Eurocopter's EC120 helicopter, which embodies the landing gear claimed in Eurocopter's U.S. '621 patent. *See* 2nd Am. Compl. ¶ 25. The presence of Eurocopter's exclusive distributor in this judicial district, along with Eurocopter's management of AEC (*see id.* ¶ 14), present an even more compelling basis for exercising jurisdiction over Eurocopter in this case than existed in *Genetic Implant* for exercising personal jurisdiction over Core-Vent. Eurocopter's bald contention that "Bell's allegations about *American's* presence in this judicial district add nothing to the analysis of specific jurisdiction" is wrong as a matter of law. Defs. Br. at 7-8 (original emphasis).

While Eurocopter did not send cease-and-desist letters to Bell Helicopter, Eurocopter took far more aggressive action. Eurocopter first sued Bell Helicopter's Canadian sister

company based on its corresponding Canadian patent, then executed a seizure against Bell Helicopter in highly disruptive manner based on its corresponding French patent, and subsequently sued Bell Helicopter in France. *See* 2nd Am. Compl. ¶¶ 51-53. Thus, Eurocopter "purposefully directed its activities at [a] resident[] of the forum," Bell Helicopter. *Genetic Implant*, 123 F.3d at 1458. Eurocopter's aggressive actions based on its French '156 patent corresponding to its U.S. '621 patent relate to Bell Helicopter's declaratory judgment claims both as a matter of logic and law. As a matter of logic, the U.S. '621 patent is certainly related to the French '156 patent because the U.S. '621 patent claims priority to the French '156 patent and has a substantially identical disclosure. *See* 2nd Am. Compl. ¶ 28.

The case law also recognizes that enforcement of a corresponding foreign patent is relevant in assessing jurisdiction over declaratory judgment claims regarding a U.S. patent. While in the past courts struggled to determine whether enforcement of a corresponding foreign patent alone was sufficient to confer subject matter jurisdiction under the Declaratory Judgment Act, there was no question that the foreign proceedings were relevant to the analysis. *See Teva Pharms. USA, Inc. v. Abbott Labs.*, 301 F. Supp. 2d 819, 822-84 (N.D. Ill. 2004) (reviewing cases and stating "the Canadian proceedings are relevant to the reasonable apprehension analysis"). Moreover, subsequent Supreme Court jurisprudence has removed any doubt that enforcement of a corresponding foreign patent is highly relevant. In, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007), the Supreme Court explained that the "reasonable apprehension of suit" test applied in *Teva* was too restrictive. Instead, the proper question was "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127; *see also SanDisk Corp. v.*

*STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (recognizing the Supreme Court's rejection of the "reasonable apprehension of suit" test and explaining, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.").

Indeed, Eurocopter does not even challenge here that its filing suit in Canada based on the corresponding Canadian patent, effecting a seizure based on its corresponding French patent, and filing suit based on its corresponding French patent are sufficiently related to its U.S. patent that these activities provide a basis for subject matter jurisdiction. Thus, while Eurocopter tacitly acknowledges their relatedness for subject matter jurisdiction purposes, Eurocopter implausibly protests that there is no relationship in contesting personal jurisdiction.

Eurocopter's entire basis for arguing that its enforcement of foreign related patents is irrelevant to Bell Helicopter's declaratory judgment claims is premised on a logical fallacy. Eurocopter points to cases establishing the obvious point that U.S. courts should not adjudicate foreign patent rights. *See* Defs. Memo. at 7 (citing *Stein Assoc., Inc. v. Heat and Control, Inc.*, 748 F.2d 653 (Fed. Cir. 1984), and *Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007)). However, Bell Helicopter is seeking declarations of non-infringement and invalidity as to Eurocopter's *U.S.* '621 patent. The cases cited by Eurocopter have nothing to do with the pertinent issue of whether Eurocopter's enforcement of foreign patents corresponding to its U.S. '621 patent relate to that U.S. patent. Eurocopter is forced to rely on inapposite law because Eurocopter is advocating that the illogical position that there is no relationship between enforcement of foreign patents corresponding to a U.S. patent and the U.S. patent itself.

2.      Exercising Personal Jurisdiction over Eurocopter Here Comports With
Fair Play and Substantial Justice

The Federal Circuit has set forth a five-factor inquiry for assessing the reasonableness of

exercising jurisdiction when a defendant seeks to avoid exercise of jurisdiction based on the "fair

play and substantial justice" factor, which the Supreme Court made clear is to be applied

sparingly:

> The reasonableness inquiry encompasses factors including (1) the burden on the
> defendant, (2) the interests of the forum state, (3) the plaintiff's interest in
> obtaining relief, (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of controversies, and (5) the shared interest of the several
> states in furthering fundamental substantive social policies.

*Campbell Pet*, 542 F.3d at 885 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77

(1985)).  All these factors favor exercising jurisdiction over Eurocopter here.  Eurocopter's brief

discussion of "fair play and substantial justice" does not even mention these factors, let alone

apply them.

First, Eurocopter concedes that it is subject to jurisdiction in the District of Columbia

(Defs. Br. at 3 n.1, 11 n.8), and the burden to Eurocopter of litigating in this district is at worst

equal to the burden of litigating in the District of Columbia.  In fact, the burden of litigating in

this district is likely lower because this is where Eurocopter has its exclusive U.S. distributor,

AEC.  It would be highly surprising if Eurocopter personnel did not travel to this district on a

regular basis as a result of that relationship.  In addition, some relevant documents must be

located in this judicial district, such as a complete copy of the agreement between Eurocopter

and AEC, while there are unlikely to be any responsive documents in the District of Columbia.

Second, Texas—indeed this district—has the most interest in adjudicating Bell

Helicopter's declaratory judgment claims regarding Eurocopter's U.S. '621 patent.  This is

where both Bell Helicopter and Eurocopter's exclusive U.S. distributor, AEC, are located and

11

accordingly where the competitive business relationship between them is centered. *See* 2nd Am. Compl. ¶¶ 4, 11, 13, 27. By contrast, the District of Columbia has no connection to the dispute. Eurocopter's main argument for litigating Bell Helicopter's declaratory judgment claims in the District of Columbia is that this is "where foreign relations with our Government are otherwise centered." Defs. Br. at 12. However, this case is not about governmental relations; it is a dispute between two private parties. Furthermore, Eurocopter's contention that 35 U.S.C. § 293 reflects a Congressional determination that suit should more appropriately proceed in the District of Columbia was rejected over forty years ago; § 293 exists to provide an alternative for the benefit of plaintiffs, not to impose restrictions for the benefit defendants. *See Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219, 228 (D.N.J. 1966).[1]

Third, as a company located in this district and employing about 5,000 people here (*see* 2nd Am. Compl. ¶¶ 4, 8), Bell Helicopter has a strong interest in obtaining convenient and effective relief from a nearby federal court. This factor clearly favors exercising personal jurisdiction here and is not diminished by the fact that jurisdiction is also available elsewhere. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367-68 (Fed. Cir. 2006) ("This inquiry requires the court to focus on the convenience and effectiveness of relief from the plaintiff's perspective ... and it is clearly more convenient for a Florida corporation with its base of operations in Florida to obtain relief in Florida.") (rejecting the notion that the availability of jurisdiction in Colorado could diminish this factor, and finding jurisdiction).

Fourth, it is more efficient for the parties to litigate Bell Helicopter's declaratory judgment claims here, rather than in the District of Columbia. Eurocopter and AEC do not

---

[1] *Japan Gas Lighter* is instructive, as it contains a detailed discussion of § 293 and makes clear that it is not a basis for restricting jurisdiction or venue to the District of Columbia, contrary to the tenor of Eurocopter's arguments here. *See* 257 F.Supp. at 227-31.

dispute that they will need to defend themselves in this district against the claim for infringement of the '242 patent, which also relates to helicopter landing gear. *See* 2nd Am. Compl. ¶ 3. Consequently, maintaining the declaratory judgment claims here will permit the parties to litigate their respective landing gear patents in one case in one court. This is more efficient than having two cases—one in the District of Columbia and one in this district, as Eurocopter advocates— which would require two courts to learn the technology and address disputed issues. Furthermore, this district resolves civil cases faster and on average tries civil cases over a year earlier than the District of Columbia. *See* Ex. B, U.S. District Court – Caseload Profiles for District of Columbia and Northern District of Texas.

Fifth, to the extent this private intellectual property dispute involves fundamental substantive social policies, the policies at stake are freedom of competition and protection of innovation. Bell Helicopter will benefit if this Court finds that Eurocopter's U.S. '621 patent does not present an obstacle to competing with Eurocopter by offering its 429 helicopter, while Defendants will benefit to the extent the Court finds that protecting the alleged invention claimed in the '621 patent precludes such competition. Since this district has the closest connection to the parties, it is in the best position to address the competing policy considerations raised by the parties' dispute.

**B.      Even Assuming *Arguendo* that this Court does not have Specific Jurisdiction over Eurocopter on the Declaratory Judgment Claims, at Minimum Discovery Should be Granted on the Issue of General Jurisdiction**

Even accepting as true Eurocopter's representations that it does not own or lease property in Texas, have officers or directors regularly working in Texas, conduct board meeting in Texas, have employees regularly working in Texas, or maintain bank accounts in Texas, this does not preclude finding general jurisdiction. The recent case *Construcciones Integrales Del Carmen, SA. de C.V. v. Goodcrane Corp.*, No. H-08-3427, 2009 WL 1883928 at *4-6 (S.D. Tex. June 30,

2009), is instructive as it reviews the law of general jurisdiction, citing cases both granting and denying motions for lack of personal jurisdiction on this basis. The cited cases finding general jurisdiction make clear that, even accepting Eurocopter's representations, general jurisdiction may nevertheless exist over Eurocopter. *See id.* at *6. Consequently, it would be premature to decide the issue of general jurisdiction based solely on the pleadings and Eurocopter's self-interested declarations, prior to Bell Helicopter's having an opportunity to take discovery on the evidentiary factors which could support finding general jurisdiction over Eurocopter. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) ("[I]f 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.'") (citing *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)) (brackets in original).

General jurisdiction has been found in a patent case based on a defendant's having sold millions of dollars of product in the state over the past several years and its broad distribution network in the state. *See LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000), *cited in Construcciones Integrales Del Carmen*, 2009 WL 1883928, at *6. In another case, general jurisdiction was premised on $4 million in sales in the state, ongoing relationships with five authorized dealers in the state, product support for those dealers, national advertising that reached the state, direct marketing in the state, and more than one hundred visits by employees to the state. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996). While evidence of such activities would be critical to assessing whether general jurisdiction exists over Eurocopter here, Bell Helicopter has not yet had an opportunity to take any discovery of Defendants. Ex. C, Affidavit of John G. Sams.

Although Bell Helicopter believes it is clear that specific jurisdiction exists over Eurocopter on the declaratory judgment claims, Bell Helicopter respectfully requests expedited jurisdictional discovery focused on the issue of general jurisdiction if this Court declines to find specific jurisdiction over Eurocopter on those claims.  Plaintiffs would seek discovery regarding factors such as those discussed above which have been found to support general jurisdiction, including (1) sales and shipments of Eurocopter products to Texas, including the extent of any contracting between Eurocopter and entities in Texas, *see LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000); *QRG, Ltd. v. Nartron Corp.*, No. 06-500, 2006 U.S. Dist. LEXIS 64121, at *7 (W.D. Penn. Sept. 7, 2006); (2) Eurocopter's management of and ongoing relationship with AEC, *see Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. Apr. 3, 2009); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 190 (D. Del. Oct. 25, 1993); (3) Eurocopter's support for its products sold in or shipped to Texas, *see 3M Innovative Prop. Co. v. InFocus Corp.*, No. 04-0009, 2005 U.S. Dist. LEXIS 2381, at *10-11 (D. Minn. Feb. 9, 2005); (4) Eurocopter's involvement in U.S. advertising of its products and the extent to which that advertising reaches Texas, *see Eli Lilly and Co. v. Sicor Pharm., Inc.*, No. 1:06-cv-238-SEB-JMS, 2007 U.S. Dist. LEXIS 31657, at *19-22 (D. Ind. Apr. 27, 2007); (5) Eurocopter's involvement in selling and marketing of its products in Texas, *id.*; (6) the extent to which Eurocopter's employees visit Texas and work in Texas, *see 3M Innovative*, 2005 U.S. Dist. LEXIS 2381 at *10; (7) the extent and nature of products and services purchased or licensed by Eurocopter from Texas entities, *see Cephalon*, 629 F. Supp. 2d at 344-45; (8) any indemnification or litigation cost sharing agreements between Eurocopter and entities in Texas, including AEC, *see Wesley-Jessen*, 863 F. Supp. at 190; and (9) the extent to which AEC engages in activities that Eurocopter would have to undertake if not for AEC's involvement, *see*

15

*Dainippon Screen Mfg Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 n.9 (9th Cir. 1994); *IP Innovations, LLC v. RealNetworks, Inc.*, 310 F. Supp. 2d 1209, 1212-13 (W.D. Wash. Mar. 12, 2004).

      **C.**    **<u>Venue is Proper in this District for the Declaratory Judgment Claims</u>**

      Plaintiffs agree that 28 U.S.C. § 1391 governs venue over the declaratory judgment claims, while 28 U.S.C. § 1400(b) governs venue over the claim for infringement of the '242 patent. Eurocopter has no legal basis for arguing that venue is improper here for the declaratory judgment claims under § 1391, and Eurocopter does not contest that venue is proper here for the claim of infringement of the '242 patent under § 1400(b).

      Venue is proper for the declaratory judgment claims under § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district, since this is where Bell Helicopter is located and this is the location from which Bell Helicopter markets and offers for sale its allegedly infringing 429 helicopter. *See Pro Sports Inc. v. West*, 639 F.Supp.2d 475, 484 (D.N.J. 2009) (finding venue proper under § 1391(b)(2) in New Jersey on a declaratory judgment claim for non-infringement of a patent because the accused products were made, kept in inventory, and sold in New Jersey); *Bounty-Full Enter., Inc. v. Forever Blue Enter. Grp.*, 923 F.Supp. 950, 958 (S.D. Tex. 1996) ("Significantly, when faced with venue challenges in declaratory judgment lawsuits regarding similar claims of 'noninfringement' of copyrights, trademarks, or unfair competition laws, other federal courts have held that these causes of action 'arise' wherever the alleged infringer (in this case, the plaintiffs) is located.") (finding venue proper under § 1391(b)(2)). Eurocopter's bald contention that a substantial part of the events did not occur in this district, ignoring these facts and applicable law, is wrong. *See* Defs. Br. at 14.

      Moreover, even assuming (contrary to law) that Eurocopter were correct that venue is not proper under § 1391(b)(2), venue is proper under § 1391(d). As a French corporation with its

principal place of business in France, Eurocopter is an "alien" and therefore "may be sued in any district." 28 U.S.C. § 1391(d); *see also Velcro Grp. Corp. v. Billarant*, 692 F.Supp. 1443, 1449-50 (D.N.H. 1988) (finding venue proper in New Hampshire under § 1391(d) for declaratory judgment claims of patent invalidity and non-infringement because the patent owner was a French corporation); *Japan Gas Lighter Assoc.*, 257 F.Supp. at 225 (finding venue proper in New Jersey under § 1391(d) for declaratory judgment claims of patent invalidity and non-infringement because the patent owner was a Swiss corporation).

**D.**  **The Affirmative Patent Infringement Claim is Properly Before this Court, Bell Helicopter is a Proper Co-Plaintiff on that Claim, and it Should Not be Severed**

Defendants do not dispute that the claim for infringement of the '242 patent is properly before this court—it is undisputed that personal jurisdiction, subject matter jurisdiction, and venue are all proper. Defendants only argue that (1) while Textron Innovations is entitled to bring the infringement claim, Bell Helicopter is not a proper party to this claim, and (2) that the infringement claim should be severed from the declaratory judgment claims. These arguments are properly rejected. Bell Helicopter has always been a proper party to the infringement claim, and to moot any dispute about this issue, Textron Innovations has now given Bell Helicopter an exclusive license. *See* Ex. D, Exclusive License Agreement. Defendants' argument for severing the infringement claim is based on the false premises that there is no jurisdiction over Eurocopter on the declaratory judgment claims, that Bell Helicopter is not a proper co-plaintiff on the infringement claim, and that there is no factual overlap between the declaratory judgment claims and the infringement claim. After dispensing with those false premises, it becomes clear that there is no rational basis for severance.

1.    Bell Helicopter has Always been a Proper Co-Plaintiff and Now Its Status
      as a Co-Plaintiff is Indisputable

From the time the claim for infringement of the '242 patent was asserted against Defendants, Bell Helicopter has been more than a "bare licensee." Bell Helicopter has been the exclusive distributor of authorized products covered by the '242 patent in the United States, and therefore has had standing as a co-plaintiff along with the patent owner, Textron Innovations. *See Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1479-81 (Fed. Cir. 1990) (holding the district court erred in refusing to allow PDL, a licensee, to join as a co-plaintiff where PDL was the exclusive vendor of the authorized products covered by the patent); *Weinar v. Rollform Inc.*, 744 F.2d 797, 806-08 (Fed. Cir. 1984) (holding that Gypsum was a proper co-plaintiff because Gypsum had an exclusive right to sell the authorized products covered by the patent as the sole distributor in the United States).

Nevertheless, to moot Defendants' arguments on this issue, Textron Innovations has made the license of the '242 patent to Bell Helicopter exclusive. *See* Ex. D. Now there can be no dispute that Bell Helicopter and Textron Innovations have standing to assert the '242 patent as co-plaintiffs because it is well-established that an exclusive licensee has standing to sue, as long as it joins the patent owner as a co-plaintiff. *See, e.g., Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995) (discussing *Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926), where the Supreme Court established the rule that an exclusive licensee can sue, as long as it is joined by patent owner).

2.    There is No Rational Basis to Sever the Claim for Infringement of the
      '242 Patent from the Declaratory Judgment Claims

Defendants cannot dispute that Plaintiffs are entitled to assert the claim for infringement of the '242 patent in this action, but they request that the Court sever this claim in the exercise of the Court's discretion, relying on Federal Rule of Civil Procedure 20. *See* Defs. Br. at 16-17.

Defendants' reliance on Rule 20, governing "permissive joinder of parties," is inapposite because, as the Supreme Court made clear in *Independent Wireless*, both Textron Innovations and Bell Helicopter are *required* to be joined together as co-plaintiffs on the claim for infringement of the '242 patent. There is no issue of permissive joinder or misjoinder. Textron Innovations and Bell Helicopter must be co-plaintiffs, either in this action or in a separate action, if the infringement claim were severed from this action.

Moreover, this action is a relatively common situation where a plaintiff, in response to a patent holder's aggressive actions, brings suit to remove the cloud over its business and, having been provoked, asserts its own patent rights in response. As a general rule, these claims proceed in a single action; that is typically the most efficient approach. *See, e.g., SanDisk*, 480 F.3d at 1376 ("SanDisk alleged infringement of one of its patents and sought a declaratory judgment of noninfringement and invalidity of the fourteen ST patents ...."); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) ("The purpose of 'preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters' ... is as valid for declaratory action as any other.") (citing *Southern Construction Co. v. Pickard*, 371 U.S. 57 (1962)). Here there are particularly compelling reasons why severance would be inappropriate.

First, Defendants' request for severance arises out of its mistaken belief that, if severance were granted, the declaratory judgment claims would be appropriately dismissed or transferred to the District of Columbia. *See* Defs. Br. at 21. As discussed above, personal jurisdiction and venue for the declaratory judgment claims are proper in this district, and therefore severance would result in two actions pending before this Court, rather than one. This would be inefficient,

especially because of the overlap between the declaratory judgment claims and the claim for infringement of the '242 patent, as discussed below.

Second, Defendants premise their arguments for severance on the mistaken assumption that Bell Helicopter is not a proper co-plaintiff on the claim for infringement of the '242 patent. As discussed above, Bell Helicopter is required to be a co-plaintiff on this claim. Accordingly, there is substantial overlap in the parties involved in the declaratory judgment claims and the claim for infringement of the '242 patent. The declaratory judgment claims involve Bell Helicopter and Eurocopter. The claim for infringement of the '242 patent similarly involves Bell Helicopter and Eurocopter, as well as two additional parties—Textron Innovations and AEC. All these claims should proceed in one suit. *See, e.g., Koninklijke Philips Elecs. N.V. v. Cardiac Sci., Inc.*, No. C03-1324C, 2003 U.S. Dist. LEXIS 17153, *7-8 (W.D. Wash. Aug. 26, 2003) (concluding that a plaintiff's claims for declaratory judgment and affirmative patent infringement claims should proceed in a single lawsuit in a single forum, in part due to the similarity of the parties and technology involved, and accordingly refusing to permit multiplication of suits).

The fact that Bell Helicopter and Eurocopter are both parties to all the claims is particularly significant because most of the discovery necessary on all the claims is in the possession of these parties. Bell Helicopter will want discovery regarding the '621 patent, which is in Eurocopter's possession, and Eurocopter will want discovery regarding the '242 patent, which is in Bell Helicopter's possession.[2] In addition, Eurocopter will want discovery regarding

---

[2] Textron Innovations is only included as a plaintiff on the claim for infringement of the '242 patent because, by law, Bell Helicopter must join the patent owner. However, the inventions claimed in the '242 patent were developed at Bell Helicopter, and the patent was originally assigned to Bell Helicopter. *See* 2nd Am. Compl., Ex. N (*see* original assignee on the face of the patent). Bell Helicopter subsequently assigned the patent to Textron Innovations and received a license (now exclusive) back from Textron Innovations; Textron Innovations is simply the corporate entity that holds the intellectual property within Textron's corporate structure. *See* Ex. D.

the 429 helicopter that is in Bell Helicopter's possession, and while it is unknown at this juncture the extent to which AEC has documentation about Eurocopter's EC120 helicopter, this information must be in Eurocopter's possession. Textron Innovations is merely a nominal plaintiff, and Defendants' emphasis on its presence as a plaintiff on the infringement claim, but not the declaratory judgment claims, is misplaced.

Third, contrary to Eurocopter's protestations, there is substantial overlap in the subject matter at issue. Both the '242 patent and the '621 patent relate to helicopter landing gear. Moreover, the landing gear on Eurocopter's EC120 helicopter, which Plaintiffs accuse of infringing the '242 patent, is the same landing gear that uses the technology covered by Eurocopter's '621 patent, which is the subject of the declaratory judgment claims. Beyond this substantial overlap in technical subject matter, there is also likely to be overlap in financial subject matter. Eurocopter's revenue and profits on its infringing sales of its EC120 helicopter will be relevant to Bell Helicopter's damages for infringement of the '242 patent. That information will also be relevant to the counterclaim for damages for infringement of '621 patent, which Eurocopter will almost certainly assert once its bid to dismiss the declaratory judgment claims is denied. It would make no sense to sever the declaratory judgment claims and the infringement claim into two separate actions, with potentially different schedules, given that there will be substantial overlap in discovery and in the technology the Court will need to understand to interpret the claims of both patents.

### E. **Plaintiffs Have Properly Alleged Willful Infringement**

Defendants have moved to dismiss Plaintiffs' allegation of Defendants' willful infringement of the '242 patent under Federal Rule of Civil Procedure 12(b)(6) relying on three principal cases: *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007). Defendants' precise

21

argument was rejected by a court applying Fifth Circuit law upon considering *Bell Atlantic* and *In re Seagate*, before *Iqbal* issued earlier this year. *Iqbal* does not change the result because Plaintiffs' willfulness allegation is certainly plausible.

In *Fotomedia Techs., LLC v. AOL, LLC*, No. 2:07cv255, 2008 WL 4135906 (E.D. Tex. Aug. 29, 2008), the court rejected a Rule 12(b)(6) challenge to willfulness allegations that is indistinguishable from Defendants' challenge here. The court first noted that in this circuit, "A motion to dismiss under rule 12(b)(6) is 'viewed with disfavor and is rarely granted." *Id.* at *1 (quoting *Lowrey v. Texas A & M University Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). The court then pointed out that the Federal Circuit had "rejected the argument that *Bell Atlantic* changed the pleading requirements of Rule 8(a) in patent infringement cases." *Fotomedia Techs.*, 2008 WL 4135906 at *1 (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 n.4 (Fed. Cir. 2007)).[3]

In the first amended complaint plaintiff Fotomedia alleged that certain defendants willfully infringed the patents-in-suit but did not detail how the defendants were alleged to have done so. *See Fotomedia Techs.*, 2008 WL 4135906, at *2. In response to defendants' argument based on *Bell Atlantic*, Fotomedia pointed out that neither the patent infringement pleading form nor Federal Circuit precedent required more. *See id.* The Court also cited *In re Seagate*, which raised the threshold for prevailing on a charge of willful infringement, but had nothing to do with pleading requirements, as Defendants here appear to acknowledge. *See* Defs. Br. at 23 (citing *In re Seagate* for the proposition, "To prevail on a charge of willful infringement, a Plaintiff must show the accused infringer acted with objective recklessness."). Upon consideration of these

---

[3] In *McZeal*, the Federal Circuit also confirmed that regional circuit law governs Rule 12(b)(6) determinations regarding patent claims. *See McZeal*, 501 F.3d at 1356.

cases, the court in *Fotomedia* concluded that the allegations of willful infringement were sufficient and that discovery was appropriate:

> Based on the authorities cited above, the court concludes that the allegations are sufficient to state a claim for indirect infringement and willful infringement, and the appropriate vehicle for clarification of the allegations are the disclosures mandated by the Local Patent Rules and discovery conducted under the Federal Rules of Civil Procedure.

*Fotomedia Techs.*, 2008 WL 4135906, at *2.

There can be no dispute that the information regarding whether or not Defendants committed willful infringement is exclusively within their control. Indeed, Defendants acknowledge that under *In re Seagate* the relevant issue is whether the internal decisions made by Defendants to pursue the accused landing gear design were objectively reckless. The court in *Fotomedia* properly recognized that discovery is necessary to clarify whether this occurred; it would be improper to shield willful infringers by precluding this discovery.

*Iqbal* does not change the analysis. *Iqbal* simply establishes that an allegation must be "plausible on its face" to survive a motion to dismiss. 129 S. Ct. at 1949. The allegations in *Iqbal* related to a classic conspiracy theory-type scenario where a person's mistreatment at the hands of detention guards was alleged to have been a result of malfeasance at the highest levels of government, which was not only highly improbable but also raised serious issues about distracting high-level government officials from their duties to respond to such outlandish allegations. *Id.* at 1951-52. Plaintiffs here do not allege any such outlandish conspiracy theories, and Defendants do not dispute that the core of Plaintiffs' infringement allegations are well pled. Plaintiffs just plausibly allege that Defendants engaged in the infringing conduct willfully. In contrast to the allegations in *Iqbal*, no great leap of the imagination is required here to believe Plaintiffs' allegations, and Plaintiffs should be entitled to take discovery on them. Defendants'

invitation to shield their possible, and plausible, willful behavior from discovery should be denied.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss and for Misjoinder of Parties.

Dated: November 13, 2009                    Respectfully submitted,

John G. Sams (jsams@browndean.com)
Texas Bar No. 17566100
Stephen C. Howell (showell@browndean.com)
Texas Bar No. 10107700
Beale Dean (bdean@browndean.com)
Texas Bar No. 05685000
BROWN, DEAN, WISEMAN, PROCTOR, HART
& HOWELL, LLP
306 W. 7th Street
Suite 200
Fort Worth, TX 76102
Tel: (817) 332-1391
Fax: (817) 870-2427

Charles H. Sanders
(admitted *pro hac vice*)
(csanders@goodwinprocter.com)
Massachusetts Bar No. 646740
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
Tel: (617) 570-1315
Fax: (617) 523-1231

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2009, I served a copy of the foregoing Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss and for Misjoinder of Parties on the following counsel of record pursuant to the Federal Rules of Civil Procedure.

> Michael V. Powell
> Thomas G. Yoxall
> Roy W. Hardin
> Locke Lord Bissell & Liddell LLP
> 2200 Ross Avenue
> Suite 2200
> Dallas, Texas 75201

John G. Sams