U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 1 2 2010

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BELL HELICOPTER TEXTRON INC.,     §
AND TEXTRON INNOVATIONS INC.,     §
                                  §
              Plaintiffs,         §
                                  §
VS.                               §   NO. 4:09-CV-377-A
                                  §
AMERICAN EUROCOPTER, LLC,         §
AND EUROCOPTER,                   §
                                  §
              Defendants.         §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the combined motions of

defendants, Eurocopter and American Eurocopter LLC ("American"),

to dismiss and for misjoinder.  Plaintiffs, Bell Helicopter

Textron Inc. ("Bell"), and Textron Innovations Inc. ("Textron"),

filed a joint response, and defendants filed a reply.  Having

considered all filings made by the parties and applicable legal

authorities, the court concludes that the motions should be

granted to the extent set forth herein.

I.

Plaintiffs' Claims

Eurocopter is a company organized under the laws of, with

its principal place of business in, France.  American is a

company whose headquarters are in Grand Prairie, Texas. Plaintiffs and defendants are distributors of helicopters.

The claims in the second amended complaint ("Complaint") concern two patents:  United States Patent No. 5,860,621 ("'621 Patent"), of which plaintiffs allege that Eurocopter is the lawful assignee, and United States Patent No. 5,462,242 ("'242 Patent"), issued to Bell on October 31, 1995.[1]  Counts I and II of the Complaint are asserted by Bell against Eurocopter.  In count I, Bell seeks a declaratory judgment of non-infringement of the '621 Patent, while in count II, it seeks a declaratory judgment of invalidity as to the '621 Patent.  In count III, both plaintiffs allege infringement by both defendants of the '242 Patent.

II.

<u>Defendants' Motions</u>

The motions raise the following grounds: (1) the court should dismiss counts I and II of the Complaint for lack of personal jurisdiction over Eurocopter pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and (2) for improper venue pursuant to Rule 12(b)(3); (3) Bell lacks standing to bring count III and should be dismissed as a party to that claim; (4) Textron should be dropped as a party or count III severed into a

---

[1]According to the Complaint, Textron is the "lawful assignee" of the '242 Patent.  Compl. at 5.

separate action because claims in count III do not arise out of the same transaction or occurrence as those in counts I and II; and (5) paragraph 79 of the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III.

### Law and Analysis Related to the Motions

A.   Personal Jurisdiction

    1.   Personal Jurisdiction Principles

The plaintiff bears the burden to establish a basis for the court's exercise of personal jurisdiction over a nonresident defendant. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).[2] Where a determination of personal jurisdiction is made based on affidavits and other written materials absent an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. Id. Allegations of the plaintiff's complaint are taken as true except to the extent that they are controverted by defendant's affidavits. Id. Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for purposes of determining

---

[2]Where jurisdictional issues are "intimately involved with the substance of the patent laws," the court applies the law of the Federal Circuit. Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1016 (Fed. Cir. 2009).

whether a prima facie case exists.  Id.; Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1017 (Fed. Cir. 2009).

The court may exercise personal jurisdiction over a nonresident if (1) the nonresident defendant is amenable to service of process under the law of the forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fifth Amendment.  Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008).  As the Texas long-arm statute has been interpreted as extending to the limits of due process, the only inquiry is whether the exercise of jurisdiction over the nonresident defendant comports with due process.  Id.; Electrosource, Inc. v. Horizon Battery Tech., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).[3]

Due process requires that (1) the nonresident defendant have "minimum contacts" with the forum state resulting from an affirmative act on the defendant's part, and (2) the contacts are such that the exercise of jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

---

[3]The Federal Circuit defers to the "interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process." 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998).

The minimum contacts prong of the due process requirement can be satisfied by a finding of either "specific" or "general" jurisdiction over the nonresident defendant. <u>Avocent</u>, 552 F.3d at 1330. For specific jurisdiction to exist, the foreign defendant must purposefully direct some activities into the forum, and the cause of action must "arise out of or relate to" those activities. <u>Id.</u> at 1330; <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995). In the context of a declaratory judgment action in a patent case,

> the contacts material to the specific jurisdiction analysis in a declaratory judgment action are not just any activities related to the patent-at-issue. Rather, the relevant activities are those that the defendant purposefully directs . . . at the forum which relate in some material way to the enforcement or the defense of the patent. Thus, courts must examine the jurisdictional facts for conduct whereby the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.

<u>Autogenomics, Inc. v. Oxford Gene Tech. Ltd.</u>, 566 F.3d 1012, 1019-20 (Fed. Cir. 2009) (internal citations and quotation marks omitted) (ellipses in original). Specific jurisdiction is a claim-specific inquiry, and "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." <u>Seiferth v. Helicopteros Atuneros, Inc.</u>, 472 F.3d 266, 274 (5th Cir. 2006).

If no basis exists for the exercise of specific jurisdiction, the court may exercise general jurisdiction when the nonresident defendant's contacts with the forum are sufficiently continuous and systematic as to support the reasonable exercise of jurisdiction. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952).

2.   Application of Law to Facts

The allegations in the Complaint concerning personal jurisdiction over Eurocopter are as follows:

> This Court has personal jurisdiction over Defendants because Eurocopter, directly and through [American], and [American] itself have done and are doing business in this judicial district by, among other things, offering their products and services to customers, business affiliates, and government entities located in this judicial district. . . . Upon information and belief, Eurocopter and [American] have also committed acts of infringement in this judicial district by using, offering to sell, selling, and/or importing into this judicial district their EC120 helicopter. . . . This Court also has personal jurisdiction over Eurocopter because Eurocopter has taken aggressive action against Bell Helicopter, which resides in this judicial district, based on Eurocopter's alleged patent rights, and Eurocopter's exclusive U.S. distributor, [American], also resides in this judicial district. Furthermore, acts giving rise to the claims herein have been purposefully directed at Bell Helicopter and threaten Bell Helicopter's operations in this judicial district.

Compl. at 5-6.  Plaintiffs further explain Eurocopter's

"aggressive action" against Bell as follows:

> 29.  Eurocopter has aggressively enforced its foreign patents corresponding to the U.S. '621 patent against Bell Helicopter through an infringement suit in Canada and a seizure and infringement suit in France.

Id. at 7.

### a.   No Specific Jurisdiction

Eurocopter contends this court lacks specific jurisdiction because the Complaint does not allege that Eurocopter has purposefully directed any activities into Texas which relate to the enforcement or defense of the '621 Patent.  Instead, according to Eurocopter, Bell would have the court assert specific jurisdiction over it based on its enforcement activities as to other patents in other countries.  For example, the Complaint details Eurocopter's actions to enforce its Canadian patent against Bell in Canada, and to enforce its French patent against Bell in France, and Bell erroneously relies on those acts to support the exercise of personal jurisdiction in this forum.

Eurocopter's enforcement actions as to other patents, initiated in other countries, provide no basis for the exercise of specific jurisdiction over Eurocopter in Texas because of the fortuity that Bell operates here.  See, e.g., Avocent, 552 F.3d at 1339 ("We are aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific

7

personal jurisdiction everywhere else.") (rejecting claim of specific jurisdiction over defendant who enforced patents in Texas, California, and Washington, D.C., but not in the state where plaintiff sought to establish personal jurisdiction).

The allegation that both defendants offer their products and services for sale here also fails to carry the day for specific jurisdiction in a declaratory judgment action for non-infringement or invalidity.  For purposes of the inquiry related to specific jurisdiction, a declaratory judgment action for non-infringement or invalidity does not arise out of or relate to "the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit."  Id. at 1332.  Thus, Bell cannot establish specific jurisdiction as to its claims of invalidity and non-infringement by alleging that Eurocopter sells its goods or services in the forum.[4]

Bell relies on Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455 (Fed. Cir. 1997), for the proposition that the exercise of specific jurisdiction satisfies due process where

---

[4]Eurocopter negates this allegation in an affidavit provided by Fabrice Arfi, its Senior Manager, Commercial, Pricing and Network Policies, which avers that Eurocopter sells helicopters and spare parts to American, but that American takes delivery of those items in Europe and transports them to the United States to sell to American's customers. Defs.' App. at 3.

the patentee "(1) has sent cease-and-desist letters to the plaintiff and (2) has an exclusive distributor that does business which involves patented products in the state." Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss and for Misjoinder of Parties ("Pls.' Brief"), at 6-7. Bell concedes that Eurocopter has never sent it cease-and-desist letters, but maintains that Eurocopter instead "took far more aggressive action" by way of the Canadian and French patent litigation, thus "purposefully direct[ing] its activities at [a] resident[] of the forum." Id. at 8-9 [brackets in original]. As discussed supra, however, the test for specific jurisdiction is not whether the nonresident defendant directed activities at a resident of the forum, but whether it directed activities into the forum.[5]

Bell further relies on American's status as Eurocopter's alleged "exclusive" distributor to confer jurisdiction over Eurocopter in Texas, again relying on Genetic Implant. Nothing in Genetic Implant or any other authority cited by the parties leads to the conclusion that the presence of an exclusive distributor in the forum, without more, is sufficient to confer

---

[5]The court recognizes that Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997), and other cases contain the language quoted from plaintiffs' brief concerning activities directed at a resident of the forum. Those courts' analysis make clear, however, that the relevant inquiry is whether the nonresident defendant directed its activities into the forum state.

specific jurisdiction over a nonresident defendant in a non-infringement action.

Rather, courts have consistently held that cease-and-desist letters, in combination with "other activities," may provide the basis for exercising specific jurisdiction.  The presence of an exclusive licensee, or in certain circumstances, an exclusive distributor, is considered as the type of "other activities" that may help establish a basis for specific jurisdiction.  See, e.g., Avocent, 552 F.3d at 1333-35 (in conjunction with cease-and-desist letters sent into the forum, "other activities directed at the forum and related to the cause of action" are required for specific jurisdiction); Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1366-67 (Fed. Cir. 2006) (finding specific jurisdiction where patentee sent "cease and desist" type letters into forum state and entered into exclusive license agreement with party conducting business in forum state); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001) (the "combination of [defendant's] infringement letter" and negotiations that culminated in four license agreements with plaintiff supported specific jurisdiction); Genetic Implant, 123 F.3d at 1458-59 (sending "cease and desist" letters and additional activities supported exercise of specific jurisdiction).

Even if the court were to consider whether the presence of American as Eurocopter's exclusive distributor, without more, could support the exercise of specific jurisdiction, the court could make no such finding.  The relevant inquiry in such circumstances is whether the license agreement, or here, the distributor agreement, "contemplate[s] a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities."  Avocent, 552 F.3d at 1334 (citing Breckenridge, 444 F.3d at 1366); see also Genetic Implant, 123 F.3d at 1459 (distributor agreement "contained other provisions similar to those typically found in a patent license agreement.").

Here, the portions of the Distributor and Service Center Agreement ("Agreement") between Eurocopter and American and the affidavits in the record support the conclusion that the Agreement is not analogous to a patent license agreement.  For example, the Agreement expressly does not transfer any patent rights from Eurocopter to American, and it expressly provides that American has no capacity to act as Eurocopter's attorney or agent.  The declaration of Kevin Cabaniss, American's Vice President, Legal Affairs & General Counsel, emphasizes this

point:  "Eurocopter has never given [American] any right or power to enforce the '621 Patent or to defend that patent against claims of invalidity."  Defs.' App. at 27.

Further, the Agreement provides that the relationship between American and Eurocopter is that of independent contractors, and that American "may organize its business and activities, as it sees fit and at its own risk."  Id. at 16.  In contrast, Bell has provided nothing to show that the Agreement is analogous to a patent license.  Thus, the Agreement, alone, cannot support the exercise of specific jurisdiction over Eurocopter.

Because the court concludes that the first two prongs of the three-prong test for specific jurisdiction are not met by the facts in this case, it need not consider whether the exercise of personal jurisdiction is reasonable and fair.

      b.   No General Jurisdiction

Eurocopter contends that it lacks the "continuous and systematic contacts with the forum state" required for this court to exercise general jurisdiction over it.  Avocent, 552 F.3d at 1331-32.  Bell apparently concedes this point: in its response to the motion to dismiss it generally argues that "it would be premature to decide the issue of general jurisdiction based solely on the pleadings and Eurocopter's self-interested

declarations" before it has an opportunity to conduct
jurisdictional discovery, and it asks the court for that
opportunity.  Pls.' Br. at 14.

"[D]iscovery on matters of personal jurisdiction . . . need
not be permitted unless the motion to dismiss raises issues of
fact."  Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841,
855 (5th Cir. 2000) (ellipses in original).  Bell does not allege
that the motion to dismiss raises questions of fact concerning
general jurisdiction, nor does Bell specifically challenge any of
Eurocopter's evidence supporting a finding of no general
jurisdiction.  Instead, Bell discusses cases where other courts
found sufficient contacts to sustain general jurisdiction, and
provides a laundry list of subjects on which it would have this
court allow it to conduct discovery.  Absent from this list are
the specific facts Bell expects such discovery would reveal to
support the exercise of general jurisdiction over Eurocopter.  A
demonstration of such facts "is especially important where, as
here, the defendant enters declarations into evidence
specifically denying certain jurisdictional allegations."
Augogenomics, Inc., 566 F.3d at 1023.  The court need not allow a
plaintiff to conduct a jurisdictional fishing expedition seeking
facts to support a claim of general jurisdiction.  See, e.g.,

id.; see also Kelly, 213 F.3d at 855.[6]

B.    Venue

Because the court concludes that it lacks personal jurisdiction over Eurocopter as to counts I and II of the Complaint, it need not address Eurocopter's argument that venue is improper as to those claims.

C.    Bell Has No Standing to Bring Count III[7]

Defendants claim that Bell lacks standing to bring the infringement claims asserted in count III of the Complaint and should thus be dismissed as to that claim.  Defendants rely on the following allegations in the Complaint:

> 21.  Textron Innovations is the lawful assignee of the '242 patent and is authorized to take action against infringement, and to collect past and future damages for infringement of the '242 patent.  Bell Helicopter is a licensee of the '242 patent.

Compl. at 5, ¶ 21.  According to defendants, these allegations are insufficient to establish Bell's standing as to count III.

"Standing to sue is a threshold requirement in every federal action" and must be present upon initiation of the action.  Sicom

---

[6]The court notes that Bell is not without remedy as to counts I and II, as by statute every foreign patentee is subject to the jurisdiction of the United States District Court for the District of Columbia or of a court in the state designated by the patentee . 35 U.S.C. § 293 (2006); Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1339 (Fed. Cir. 2008).

[7]Defendants' argument as to standing appears to be grouped with its motion for misjoinder.  Having dismissed counts I and II for lack of personal jurisdiction over Eurocopter, and concluding that Bell lacks standing to appear as a plaintiff as to count III, the court need not reach defendants' arguments as to misjoinder.

Sys., Ltd. v. Agilent Tech., Inc., 427 F.3d 971, 975-76 (Fed.

Cir. 2005) (internal citations omitted). The plaintiff bears the

burden to establish standing. Id.

Under the Patent Act, "[a] patentee shall have remedy by

civil action for infringement of his patent." 35 U.S.C. § 281

(2006). The term "patentee" encompasses "not only the patentee

to whom the patent was issued but also the successors in title to

the patentee." Id. at § 100(d). Thus, where the patentee

assigns all substantial rights under the patent, the assignee may

be deemed the effective patentee under the statute and has

standing to sue for patent infringement in its own name. Sicom

Sys., 427 F.3d at 976.

Where a party is an exclusive licensee, like an assignee it

may also have standing as a party to an infringement action.

Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1552 (Fed. Cir.

1995).

> To be an exclusive licensee for standing purposes, a
> party must have received, not only the right to
> practice the invention within a given territory, but
> also the patentee's express or implied promise that
> others shall be excluded from practicing the invention
> within that territory as well. See Indep. Wireless Tel.
> Co. v. Radio Corp. of Am., 269 U.S. 459, 468, 46 S.Ct.
> 166, 169, 70 L.Ed. 357 (1926).

Id. No standing is conferred on a party who is a "bare

licensee," that is, one who has received no right to exclude

others from making, using, or selling the patented invention.

Id. "A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." Sicom Sys., 427 F.3d at 976 (internal citations omitted).

In the Complaint, Bell alleges that Textron is "the lawful assignee of the '242 patent" but that Bell is only "a licensee" of the '242 Patent. Compl. at 5, ¶ 21. Nowhere in the Complaint does Bell allege that it is an exclusive licensee, nor does it appear that such was the case, as Textron granted Bell an exclusive license on November 13, 2009--the same day plaintiffs filed their response to defendants' motions. However, "in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003) (internal citations omitted) (emphasis in original); see also Sicom Sys., 427 F.3d at 975-6 ("Standing must be present at the time the suit is brought.").

In its response Bell contends that from the time it asserted the infringement claim against defendants, it was "the exclusive distributor of authorized products covered by the '242 patent in

the United States," and thus had standing along with Textron to bring the infringement claim. Pls.' Resp. at 18. The difficulty for Bell is that the allegation concerning its position as an exclusive distributor is nowhere found in the Complaint, nor is it set forth in any affidavit or other type of evidentiary material. Bell's contentions in its response are unavailing, as "the necessary factual predicate [to establish jurisdiction] may not be gleaned from the briefs and arguments themselves." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 235 (1990) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 547 (1986)).

Bell relies on Kalman v. Berlyn Corp., 914 F.2d 1473 (Fed. Cir. 1990), and Weiner v. Rollform Inc., 744 F.2d 797 (Fed. Cir. 1984), in support of its contention that its position as Textron's exclusive distributor was equivalent to that of an exclusive licensee for standing purposes. Bell's reliance is misplaced. The court in Kalman considered the situation where an individual patentee who was a fifty-percent shareholder in a corporation sought leave to add the corporation as a co-plaintiff in an infringement suit. At all times the corporation was the sole licensed distributor of the plaintiff's patented product, the defendant infringer consistently treated the plaintiff and the corporation as a single, interchangeable entity, and

plaintiff's proposed amendment sought recovery of the lost profits of the corporation. <u>Kalman</u>, 914 F.2d at 1479-82. In allowing the addition, the court clarified:

> It is important to note that in this case we do not give any licensee who joins the patentee standing to sue an infringer. When the sole licensee, however, has been shown to be directly damaged by an infringer in a two supplier market, and when the nexus between the sole licensee and the patentee is so clearly defined as here, the sole licensee must be recognized as the real party in interest.

<u>Id.</u> at 1481-82. None of the facts cited by the court as critical to its holding are alleged in the present case.

Similarly, in <u>Weinar</u>, while the court allowed the exclusive licensee/distributor to join as a plaintiff, the parties did not raise, and the court did not address, whether that party had standing as of the commencement of the infringement litigation.

Finally, Bell relies on <u>Abbott Labs. v. Diamedix Corp.</u>, 47 F.3d 1128 (Fed. Cir. 1995), for the proposition that "it is well-established that an exclusive licensee has standing to sue, as long as it joins the patent owner as co-plaintiff." Pls.' Resp. at 18. While this is one of the principles recognized by <u>Abbot Labs</u>, another is that "a bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally recognized interest that entitles it to bring or join an infringement action." 47 F.3d at 1131. As

nothing in the Complaint is alleged or can establish that at the time it initiated this action Bell had any type of exclusive license, or was anything more than a "bare licensee," Abbott Labs fails to support Bell's claim as to standing.

D.   Paragraph 79 Should Be Dismissed

Defendants seek dismissal of paragraph 79 of the Complaint for failure to state a claim upon which relief may be granted. Paragraph 79 alleges in its entirety:

> Upon information and belief, Defendants have been willfully infringing the '242 patent, and thus Plaintiffs are entitled to recover increased damages under 35 U.S.C. § 284. Defendants' willful infringement makes this case exceptional, and thus Plaintiffs are entitled to recover attorneys' fees under 35 U.S.C. § 285.

Compl. at 18. Defendants contend that paragraph 79 makes only conclusory allegations concerning willful infringement, enhanced damages, and exceptional case attorney's fees because plaintiffs have failed to allege any facts that would support those allegations. The court agrees.

Plaintiffs respond that defendants do not appear to be challenging their core infringement allegations, and that they "plausibly allege that Defendants engaged in the infringing conduct willfully." Pls.' Resp. at 23. However, it appears that plaintiffs themselves are as yet unaware of any facts that might support the claim of willfulness, as the Complaint alleges that

"[u]pon information and belief," defendants have willfully infringed the '242 Patent. Compl. at 18, ¶ 79. The response further asserts that plaintiffs should be allowed to conduct discovery to support their allegation of willfulness. Id.

While a plaintiff need not provide detailed factual allegations as to a claim of willfulness, the complaint must provide more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007). Despite a review of the Complaint, the court has found no facts, and plaintiffs have directed the court's attention to none, that support the claim of willfulness. Accordingly, even under the liberal pleading standards of Rule 8(a)(2) of the Federal Rules of Civil Procedure, paragraph 79 fails to state a claim for willfulness. If Textron later learns of facts through discovery or otherwise that could support such a claim, it can at that time seek leave of court to amend its pleadings.

IV.

Order

For the reasons discussed herein,

The court ORDERS that:

(1) Eurocopter's motion to dismiss for lack of personal jurisdiction be, and is hereby, granted, and counts

I and II of the Complaint be, and are hereby, dismissed without prejudice;

(2) Defendants' motion for misjoinder be, and is hereby, granted to the extent it contends Bell has no standing as to count III of the Complaint, and Bell be, and is hereby, dismissed for lack of standing;

(3) Defendants' motion to dismiss paragraph 79 be, and is hereby, granted; and

(4) The remaining portions of defendants' motion to dismiss and motion for misjoinder be, and are hereby, denied as moot.

The court further ORDERS that from this point forward the style of this case shall be "Textron Innovations Inc., Plaintiff, v. American Eurocopter, LLC, and Eurocopter, Defendants," and that the only claim asserted in the action is Textron's claim against defendants of infringement of the '242 Patent.

The court hereby determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of counts I and II of the Complaint and dismissal of Bell as a plaintiff as to count III.

SIGNED May 12, 2010.

_____
JOHN McBRYDE
United States District Judge