IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 2 5 2011

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

| | | |
|---|---|---|
| TEXTRON INNOVATIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-377-A |
| | § | |
| AMERICAN EUROCOPTER, LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion for summary
judgment of defendants, American Eurocopter Corporation,[1] and
Eurocopter, seeking a summary adjudication that the patent
infringement claims of plaintiff, Textron Innovations, Inc.,
against them are without merit. After having considered such
motion, plaintiff's response in opposition, defendants' reply,
the remaining parts of the summary judgment record, and
applicable legal authorities, the court has concluded that such
motion should be granted.

---

[1]There seems to be agreement between the parties that American Eurocopter Corporation is the proper
defendant in place of American Eurocopter, LLC, the latter having been merged into the former in
December 1999.

## Nature of the Litigation

The motion for summary judgment is directed to the claims made by plaintiff in Count III of the second amended complaint. Counts I and II were dismissed by final judgment as to certain parties and claims signed May 12, 2010. By the remaining count plaintiff accuses defendants of infringing and/or inducing infringement and/or contributing to the infringement of United States Patent No. 5,462,242 ("'242 patent"), which plaintiff owns as the assignee of the patent. The subject of the '242 patent is a landing-gear assembly for use on a helicopter.

Plaintiff's claim of infringement relates to the "making, using [sic] offering for sale, and/or selling within the United States, and/or importing into the United States helicopters with infringing landing gear assemblies, including without limitation [defendants'] EC120 helicopter . . . ." Second Am. Compl. at 17, ¶ 77. More specifically, plaintiff alleges that:

> Defendants' landing gear infringes because, *inter alia* and upon information and belief, it has a strap and crosstube with the following features: the strap has an inner surface adapted to engage an outer surface of a crosstube; the strap has an outer surface including a stop surface for mating with a bracket to minimize lateral movement of the bracket on the strap: the strap extends over the top of the crosstube and generally half way around the crosstube, terminating in two lower

edges that extend axially with respect to the
crosstube; the strap has a plurality of strap fastener
holes located proximate to the neutral bending axis of
the crosstube to minimize stress at the strap fastener
holes, the strap is otherwise imperforate to minimize
stress concentration; the crosstube has crosstube
fastener holes registering with the strap fastener
holes on the strap; the strap is fastened to the
crosstube through the strap fastener holes and
crosstube fastener holes; and the outer surface and an
inner surface of the crosstube have built-in residual
compressive stresses for improving fatigue strength and
improving resistance to corrosion and mechanical
damage.

Id. at 18, ¶ 77.

Plaintiff seeks recovery from defendants of damages to
compensate it for defendants' alleged infringement, together with
costs and interest, attorneys' fees under 35 U.S.C. § 285, and an
injunction against further infringement.

## II.

### Grounds of Defendants' Motion

Defendants' motion seeks a summary adjudication that neither
of them infringed the '242 patent for each of the following
reasons:

1. None of the claims of the '242 patent are
infringed by the landing gear assemblies of the EC 120
helicopter, because the claims are expressly limited to
improved replacement landing gear assemblies. The
landing gear that is sold as part of an EC 120
helicopter does not infringe because it is not a
replacement landing gear assembly.  Eurocopter and
American do not sell or distribute complete replacement

3

landing gear assemblies for the EC 120 helicopter, but rather only individual parts that are not improved but are the same as those sold as part of the EC 120 helicopter.

2. None of the claims of the '242 patent are infringed, either literally or under the doctrine of equivalents, because the bracket does not extend into engagement with the strap and the strap does not have an outer surface that mates with the bracket to prevent movement of the bracket on the strap, either literally or under the doctrine of equivalents. Instead, the bracket surrounds a rubber gasket that contacts the stop.

3. Claims 1-9 and 19-26 of the '242 patent are not infringed because the outer and inner surfaces of the cross-tubes do not, literally or under the doctrine of equivalents, have "built-in compressive stresses for improving fatigue strength and improving resistance to corrosion and mechanical damage" as required by those claims.

4. Claims 10-18 of the '242 Patent are not infringed because there is no evidence that the cross tubes, when in the cross tube configuration, have a ratio of fatigue strength over yield strength of not less than 0.35, either literally or under the doctrine of equivalents.

Mot. at 1-2. Eurocopter adds a fifth reason for noninfringment as to it:

5. Eurocopter cannot be found to infringe the '242 patent because it has not manufactured, used, imported, sold, or offered to sell the EC 120 helicopter or replacement parts for the landing gear of the EC 120 helicopter into the United States. All of Eurocopter's business activities related to the EC 120 helicopter were conducted outside the United States and thus do not infringe a United States patent.

<u>Id.</u> at 2.

In the interest of judicial economy, the court is addressing in this memorandum opinion only the first two reasons.

III.

<u>Patent '242</u>

Patent '242 was issued October 31, 1995, pursuant to an application filed November 5, 1993. It shows Bell Helicopter Textron, Inc., as the assignee. Apparently the parties are in agreement that sometime after the patent was issued it was assigned by Bell Helicopter Textron, Inc., to plaintiff, which now is the owner of the patent.

The title of the patent is "Helicopter Landing Gear Assembly." Of the twenty-six claims in the patent, three (claims 1, 10, and 19) are independent. Each of the others is dependent on one of the independent claims, thus incorporating all of the elements of the independent claim. Plaintiff opposes the motion for summary judgment in reliance on independent claim 10 and dependent claims 11-12 and 16-18. Independent claim 10 is worded as follows:

> 10. An improved replacement helicopter landing gear assembly, of the type having a bracket extending from the helicopter fuselage into engagement with a strap on top of a generally cylindrical crosstube that supports landing devices, the bracket engaging the

strap and stabilizing the fuselage with respect to the
crosstube, the improvement comprising:

the strap having an inner surface adapted to
engage an outer surface of the crosstube;

the strap having an outer surface including a stop
surface for mating with the bracket to minimize
lateral movement of the bracket on the strap;

the strap extending over the top of the crosstube
and generally one half around the crosstube,
terminating in two lower edges that extend
axially with respect to the tube;

the strap having a plurality of strap fastener
holes located proximate to the neutral bending
axis of the crosstube to minimize stress at the
strap fastener holes, the strap being otherwise
imperforate to minimize stress concentration;

the crosstube having crosstube fastener holes
registering with the strap fastener holes on the
strap;

the strap being fastened to the crosstube through
the strap fastener holes and the crosstube
fastener holes; and

the crosstube being made of a material which, in a
crosstube configuration, has a ratio of fatigue
strength over yield strength of not less than
0.35.

Mot., App. at 35 [col. 7, lines 9-38]. Claims 11-12 and 16-18,

which are dependent on claim 10, are worded as follows:

    11.  The landing gear assembly according to claim
10 wherein the strap extends around the crosstube so
that the lower edges of the strap lie on a plane
through the neutral bending axis of the crosstube, and
wherein the strap fastener holes are located

essentially 15 degrees above the lower edges of the strap.

12.   The landing gear assembly according to claim 10 wherein the crosstube is formed in an unstable temper condition to reduce the stresses built into the crosstube during formation.

. . . .

16.   The landing gear assembly according to claim 10 wherein a region of material around the crosstube fastener holes is cold worked to help prevent crack initiation at the crosstube fastener holes.

17.   The landing gear assembly according to claim 10 further comprising an upper protective barrier located between the strap and the crosstube to reduce abrasion between the strap and the crosstube.

18.   The landing gear assembly according to claim 10 further comprising at least one lower protective barrier located between a bottom portion of the crosstube and the bracket for reducing abrasion between the bracket and the crosstube.

Id. [col. 7, lines 39-48, 59-67; col. 8, lines 1-4].

IV.

Analysis

A.   Pertinent Summary Judgment Burdens

A party is entitled to summary judgment on all or any part

of a claim as to which there is no genuine issue of material fact

and as to which the moving party is entitled to judgment as a

matter of law.   Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247 (1986).   The moving party has the initial

burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial.  Anderson, 477 U.S. at 248, 256.  To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).  An issue is material only if its resolution could affect the outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported allegations, conclusory in nature, are insufficient to defeat a

proper motion for summary judgment.  <u>Simmons v. Lyons</u>, 746 F.2d

265, 269 (5th Cir. 1984).

B.    <u>The First Two Reasons Given by Defendants for
      Noninfringement</u>

      1.    <u>The First Reason--Based on the Use of the Words
            "Improved" and "Replacement" in the '242 Patent</u>

The words "improved" and "replacement" are used throughout

the '242 patent and its prosecution history, either separately or

together in the term "improved replacement."

The first sentence of the "Abstract" makes reference to

"[a]n <u>improved</u> helicopter landing gear assembly."[2]  Mot., App. at

26.  The remainder of the Abstract describes in a general way the

improvements contemplated by the invention.  The concluding

sentence says that the combination of the described improvements

results in a substantially increased life of the landing gear

assembly.  <u>Id.</u>  The word "replacement" is not used in the

Abstract.  <u>Id.</u>

Under the subheading "Field of the Invention," below the

heading "Background of the Invention," the first sentence states

that the invention relates "in particular to an <u>improved</u>

<u>replacement</u> landing gear assembly" of a specified type.  <u>Id.</u> at

_____

[2]Whenever the words "improved" or "replacement" are emphasized in the text, the emphasis has been
added.

9

32 [col. 1, lines 7-10]. There are descriptions under the further subheading "Description of the Prior Art" of landing gear assemblies currently being used by several helicopter models that suffer from the problem of premature failure caused by corrosion and fatigue, with the result that the crosstubes of the landing gear assemblies must eventually be <u>replaced</u>. <u>Id.</u> [col. 1, lines 12-37]. Other shortcomings of landing gear assemblies currently in use are described, with the explanation that, because of the problems with landing gear assemblies currently in use, they have been limited to a shorter service life than is desirable. <u>Id.</u> [col. 1, lines 52-54]. The final sentence states that "[i]t would be beneficial to have a <u>replacement</u> landing gear assembly that would have a substantially longer service life than the prior art landing gear assemblies." <u>Id.</u> [col. 1, lines 54-57].

In the first sentence under the heading "Summary of the Invention," the statement is made that "[i]t is the general object of the invention to provide an <u>improved replacement</u> helicopter landing gear assembly to substantially increase useful service life," <u>id.</u> [col. 1, lines 61-63], which is followed by a summary description of the invention.

Under the heading "Description of the Preferred Embodiment," the statements are made that "[t]he diameter of the outer surface

10

26 of the crosstubes 14 has to remain unchanged from the prior art crosstubes so that the new crosstubes can be used as replacements for the old crosstubes . . .," id. at 33 [col. 4, lines 21-24], and that "[t]he prior art crosstubes that this preferred embodiment is designed to be a replacement for, were constructed of the aluminum alloy . . .," id. at 33 [col. 4, lines 25-28]. Under that same heading reference is made twice to "improvements," and twice to an "improvement," made by the invention over prior art landing gear assemblies. Id. [col. 4, lines 25-28, 33]; 34 [col. 5, lines 18, 55; col. 6, line 7].

The preamble to each of the independent claims starts with the words "[w]hat is claimed is . . . [a]n improved replacement helicopter landing gear assembly," followed by a general description of the components of the assembly contemplated by the invention and then by the words "the improvement comprising."[3] Id. at 34 [col. 6, lines 15-21]; 34 [col. 6, line 15] and 35

---

[3]Each of the independent claims appears to have been written in Jepson format, "meaning that the claim first describes the scope of the prior art and then claims an improvement over the prior art." Dow Chem. Co. v. Sumitomo Chem. Co., Ltd., 257 F.3d 1364, 1368 (Fed. Cir. 2001). See also Geo M. Martin Co. v. Alliance Mach. Sys., 618 F.3d 1294, 1298 (Fed. Cir. 2010). "When [the Jepson] form is employed, the claim preamble defines not only the context of the claimed invention, but also its scope." Rowe v. Dror, 112 F.3d 473, 479 (Fed. Cir. 1997). "Thus, the preamble is a limitation in a Jepson-type claim" and "in Jepson format, the preamble helps define the scope of the invention." Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1029 (Fed. Cir. 2002).

[col. 7, lines 10-16]; 34 [col. 6, line 15] and 35 [col. 8, lines 5-11].

The word "<u>replacement</u>" in each of the preambles was added by an amendment filed in response to the Examiner's rejection of the claims as originally stated. <u>Id.</u> at 43-46. Under the heading "Applicant's Claimed Invention," the explanation was given in the amendment document that prior-art landing gear assemblies have a short useful life brought about by premature failure caused by corrosion and fatigue and that "[t]o avoid failure, the crosstubes have to be <u>replaced</u> frequently." <u>Id.</u> at 46. Under that same heading, the following additional explanations were provided:

>   Applicant's invention is directed to a <u>replacement</u> landing gear assembly with increased useful life (page 2, lines 2-4). Making a <u>replacement</u> landing gear assembly results in additional criteria which must be met. For example, the outer diameter of the crosstubes must remain unchanged so that the crosstubes can properly engage the already existing bracket extending from the helicopter fuselage. These additional criteria must be met while still meeting the primary criteria of the landing gear assembly, namely, absorption of a specific amount of energy.
>
>   Prior to this invention, manufacturers of <u>replacement</u> landing gear assemblies have found it necessary to require rather frequent <u>replacement</u> of the landing gear assemblies because of the inability to design landing gear assemblies with a useful life approaching the life of the helicopter. Applicant's invention solves this problem by providing an <u>improved</u>

replacement landing gear assembly with a useful life
substantially greater than that of prior-art landing
gear assemblies.

Applicant's claimed invention achieves its
objectives by a combination of improvements to the
prior-art landing gear assemblies. One of the
improvements is the placement of the strap fastener
holes only near the neutral bending axis of the
crosstube. Another improvement is the use of built-in
residual compressive stresses on the outer and inner
surfaces of the crosstubes. Yet another improvement is
the use of a material which, in a crosstube
configuration, has a ratio of fatigue strength over
yield strength of not less than 0.35.

Id. at 47-48. The amendment document added that the "above

improvements are claimed in the independent claims." Id. at 48.

Under the heading of "Nonobviousness of Claim 10," the

amendment document again spoke of the need for the invention to

have a crosstube outer diameter the same as the crosstube being

replaced. Id. at 52. The amendment document also made reference

to various solutions attempted by the industry to solve landing

gear problems and to the "industry's failure to build a

replacement landing gear assembly having a useful life close to

that of the landing gear of the present invention." Id. at 53.

Defendants argue that:

The use of the term "replacement" in the claims
necessarily excludes the helicopter's original landing
gear since there needs to be something that is being
"replaced" for there to be a replacement. Therefore,
the claims cannot cover the original landing gear of

13

the allegedly infringing EC 120 helicopter, but rather
only a landing gear assembly used on the helicopter
after the original is removed. . . .

          . . . .

     In the context of the '242 patent, the limitation
"improved replacement helicopter landing gear" also
requires that the replacement landing gear assembly
that is being claimed is improved or otherwise
different from the original landing gear on the
helicopter when it was originally sold.

Br. in Supp. of Mot. at 13-14.  In response, plaintiff maintains

that "the terms 'improved' and 'replacement' in the claim

preamble mean an improvement to and replacement for <u>prior art</u>

landing gear assemblies, or components thereof."  Br. in Opp'n at

17.

     The court agrees with plaintiff that the word "improved," as

used in the preambles to the claims, denotes no more than that

the invention is thought to be an improvement over prior art

landing gear assemblies; and, the court agrees with defendants

that the word "replacement," as used in the preambles, denotes

the intent that the invention, an improved helicopter landing

gear assembly, is to be used as a replacement for a landing gear

assembly already installed on a helicopter and that its

construction be suitable for that purpose.  To whatever extent

there might have been uncertainty on those subjects before the

application was amended, it would have been eliminated by the
wording in the amendment document, which makes clear that the
words "replacement" and "improvement" as used in the patent have
entirely different meanings, and that the invention's
improvements were "directed to a replacement landing gear
assembly with increased useful life," Mot., App. at 47.
Particularly significant to the subjects under discussion is the
language quoted <u>supra</u> at 12-13.[4] The invention's stated purposes
were (a) to make improvements on landing gear assemblies that,
before the invention, were being used as replacements for
inadequate landing gear assemblies in use on helicopters so that
the improved replacement landing gear assemblies would not be
subject to failures of the kinds being experienced by the prior
art replacement assemblies and (b) to cause the replacement
assemblies to be structurally compatible for use as replacements.

Plaintiff takes the position that even if the word
"replacement" indicates that the anticipated use of the invention
would be as replacements for landing gear assemblies previously

---

[4]Prosecution history, such as the description of the claimed invention set forth in the quotation marks
at pages 12-13 of this memorandum opinion, can be used to limit the scope of a claim when "the
applicant [has taken] a position before the PTO that would lead a competitor to believe that the applicant
had disavowed coverage of the relevant subject matter." <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d
1314, 1325 (Fed. Cir. 2003). The position the applicant took in the amendment document was a
confirmation that the applicant had disavowed coverage of original equipment landing gear assemblies
and was limiting the coverage to assemblies used as replacements.

installed on helicopters, defendants are no better off because an
anticipated use of the invention does not create an added
limitation, and that the absence of use-as-replacement language
in the claimed improvements causes the anticipated use to be
irrelevant.  There is case authority providing superficial
support for plaintiff's position.  "Absent an express limitation
to the contrary, any use of a device that meets all of the
limitations of an apparatus claim written in structural terms
infringes that apparatus claim."  Paragon Solutions, LLC v. Timex
Corp., 566 F.3d 1075, 1091 (Fed. Cir. 2009).  "[A] preamble is
not limiting where a patentee defines a structurally complete
invention in the claim body and uses the preamble only to state a
purpose or intended use for the invention."  Catalina Mktg.
Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed.
Cir. 2002) (internal quotation marks omitted) (quoting Rowe v.
Dror, 112 F.3d 473, 478 (Fed. Cir. 1997)).

However, the more persuasive authority is that "clear
reliance on the preamble during prosecution to distinguish the
claimed invention from the prior art transforms the preamble into
a claim limitation because such reliance indicates use of the
preamble to define, in part, the claimed invention."  Id. at 808.
Paraphrasing language the Federal Circuit used in Omega

Engineering, Inc. v. Raytek Corp., the fact that the prosecution history discloses that "the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of [landing gear assemblies other than those that were to be used as replacements for previously installed assemblies]" is an important consideration. 334 F.3d 1314, 1325 (Fed. Cir. 2003).

The court has concluded that the addition by the amendment document of the word "replacement" to the preamble to each of the independent claims indicates the applicant's clear reliance on the preamble during prosecution to transform the preamble into a claim limitation. The explanations given for the amendment to the preamble add to that clarity.[5] See supra at 12-13. The addition of the word "replacement" to the preamble helps define the scope of the invention, see Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1029 (Fed. Cir. 2002), and, thus, is a limitation on the independent claims. As the Federal

_____

[5]Claim interpretation begins with the claims themselves, the written description, and the prosecution history. Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1346 (Fed. Cir. 2004). See also Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary meaning of terms used in the claims must be derived in the context of the written description and the prosecution history. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). The prosecution history can serve to confirm an otherwise doubtful meaning of a claim. Microsoft Corp., 357 F.3d at 1349. The amendments to the claims, and all arguments to overcome and distinguish references, constitute, of course, prosecution history. Seachange Int'l, Inc. v. C-Cor, Inc., 413 F.3d 1361, 1372 (Fed. Cir. 2005).

Circuit explained in <u>Bell Communications v. Vitalink</u>

<u>Communications</u>:

> [W]hen the claim drafter chooses to use <u>both</u> the
> preamble and the body to define the subject matter of
> the claimed invention, the invention so defined, and
> not some other, is the one the patent protects.
> [T]erms appearing in a preamble may be deemed
> limitations of a claim when they give meaning to the
> claim and properly define the invention. . . . Whether
> a preamble of intended purpose constitutes a limitation
> to the claim is, as has long been established, a matter
> to be determined on the facts of each case in view of
> the claimed invention as a whole.

55 F.3d 615, 620 (Fed. Cir. 1995) (citations, internal quotation

marks, parentheses, and footnote omitted). The key effect to be

given to the wording of a preamble was explained by the Federal

Circuit in <u>In re Paulsen</u> as follows:

> Although no "litmus test" exists as to what effect
> should be accorded to words contained in a preamble,
> review of a patent in its entirety should be made to
> determine whether the inventors intended such language
> to represent an additional structural limitation or
> mere introductory language.

30 F.3d 1475, 1479 (Fed. Cir. 1994). If a word in the preamble

"breathes life and meaning into the claims" it "is a necessary

limitation to them." <u>Id.</u>

The adding by the amendment document of the word

"replacement" to each of the preambles represents an additional

structural limitation because, at the least, it adds to the

claims the concept expressed in the specifications and
prosecution history that the structure of the invention must be
compatible with the assembly it is to replace, i.e., the outer
diameter of the crosstubes of the replacement landing gear
assembly must be the same as the crosstubes on the assembly it is
to replace.  Recall, the specifications said that "[t]he diameter
of the outer surface 26 of the crosstubes 14 has to remain
unchanged from the prior art crosstubes so that the new
crosstubes can be used as replacements for the old crosstubes."
Mot., App. at 33 [col. 4, lines 21-24].  And, the amendment
document makes clear that the mere use of the word "replacement"
in the preamble implies additional criteria that must be met.
Telling is the following language from the amendment document:

> Applicant's invention is directed to a replacement
> landing gear assembly with increased useful life (page
> 2, lines 2-4).  Making a replacement landing gear
> assembly results in additional criteria which must be
> met.  For example, the outer diameter of the crosstubes
> must remain unchanged so that the crosstubes can
> properly engage the already existing bracket extending
> from the helicopter fuselage.

Id. at 47 (emphasis added).  The same point is made specifically
as to independent claim 10.  Id. at 52.

Without the addition of the word "replacement" to the
wording of the independent claims, there would be nothing in the

19

independent claims providing, for instance, the obviously intended limitation that the structure of each specimen of the invention must have crosstubes having the same outer diameter of the crosstubes that exist on the landing gear assembly that is to be replaced by an assembly made to the other limitations of the patent.

For the reasons stated above, the court concludes that the landing gear assemblies installed as original equipment by defendants, or either of them, on helicopters do not infringe the '242 patent.

This brings the court to the issue of whether the patent was infringed by the making and supplying by one or both defendants of landing gear assemblies, or parts thereof, for use in the replacement or repair of originally installed landing gear assemblies.

In addition to taking the position that original equipment landing gear assemblies on defendant's helicopter do not infringe the patent by reason of the "improved replacement landing gear assembly" language, defendants argue in that same section of their brief that:

> Further, the claims expressly require that the replacement landing gear assembly contain certain parts, namely 1) the bracket that connects the landing

20

gear to the helicopter fuselage, 2) a crosstube, and 3) a strap that is located on the cross tube. The specification even describes the field of the invention as being particularly related to landing gears of the type that have all three of these required parts. As a result, even parts sold for the purpose of substituting out the original parts are not an "assembly" unless all three parts are present. Piecemeal replacement of individual parts (*e.g.*, a cross tube) cannot be said to be use of the patented three piece "assembly."

Br. in Supp. of Mot. at 13-14 (references omitted). Defendants

maintain that: "There is no replacement landing gear assembly

offered for sale that contains the bracket, the cross tube and

the strap (or stop) on the cross tube. Instead, only the

individual replacement parts can be purchased by customers." Id.

at 15-16 (record references omitted). In conclusion, defendants

argue that:

[S]ince there is no evidence of an improved replacement landing gear assembly for the EC 120 that is different from the original landing gear and that also contains a bracket, a strap, and a crosstube the replacement landing gear limitation is not met either literally or under the doctrine of equivalents, and none of the claims are infringed as a matter of law.

Id. at 17.

Plaintiff responds that, even if defendants sell only

component parts and not the entire landing gear assemblies,

defendants cannot avoid liability for infringement. Br. in Opp'n

at 23.   In support of its response, plaintiff relies on 35 U.S.C.

§ 271(c), which states in pertinent part that:

> Whoever offers to sell or sells within the United
> States . . . a component of a patented machine . . .
> constituting a material part of the invention, knowing
> the same to be especially made . . . for use in an
> infringement of such patent, and not a staple article
> or commodity of commerce suitable for substantial
> noninfringing use, shall be liable as a contributory
> infringer.

35 U.S.C. § 271(c).

As the Federal Circuit explained in <u>Fujitsu Ltd. v. Netgear</u>

<u>Inc.</u>, to establish contributory infringement as contemplated by

§ 271(c), "the patent owner must show . . . 1) that there is

direct infringement, 2) that the accused infringer had knowledge

of the patent, 3) that the component has no substantial non-

infringing uses, and 4) that the component is a material part of

the invention.   620 F.3d 1321, 1326 (Fed. Cir. 2010).   In their

reply, defendants maintain that contributory infringement cannot

be shown because there is no evidence that any component it

furnished was used by a third party in a direct infringement of

the '242 patent.   Reply. at 11-12.   The court agrees with

defendants.

The unchallenged summary judgment evidence is that

defendants do not sell a replacement landing gear assembly that

contains a bracket, a strap, and a crosstube.  Instead, the
record shows that defendants sell only individual components of
the type landing gear installed on the EC120 and not entire
replacement assemblies.  Mot., App. at 4, ¶ 4.  There is no
evidence that any of defendants' customers replaced all three
required parts of the landing gear assembly on a single
helicopter.  "[I]t is not enough to simply show that a product is
capable of infringement; the patent owner must show evidence of
specific instances of direct infringement."  Fujitsu Ltd., 620
F.3d at 1329.  Consequently, even if the court assumes, arguendo,
that a combination of components of defendants' assembly would
infringe, there is no summary judgment evidence of any direct
infringement, with the result that there is no summary judgment
evidence of a fact that must exist for defendants to be liable
for contributory infringement.

    2.   The Second Reason--Absence on Defendants' Landing
         Gear Assembly of Features of the Claims of the
         '242 Patent Having to Do with the Straps

    The independent claims of the '242 patent require, inter
alia, that:

         (a)  "the landing gear assembly [have] a

         bracket extending from a helicopter fuselage

         into engagement with a strap on top of a

generally cylindrical crosstube," Mot., App.

at 34-35 [col. 6, lines 17-20; col. 7, lines

10-13; col. 8, lines 6-9]; and

(b)  "the strap [have] an outer surface

including a stop surface for mating with the

bracket to minimize lateral movement of the

bracket on the strap," id. [col. 6, lines 25-

27; col. 7, lines 19-21; col. 8, lines 14-

16].

According to defendants, "[t]he ordinary meaning of these

limitations requires that 1) the bracket seats on the strap, and

2) the stop surface of the strap contacts the bracket to minimize

movement."  Br. in Supp. of Mot. at 18.  Defendants argue that:

> [S]ince there is no evidence to support a
> factual finding that the landing gear of the
> EC 120 helicopter has a bracket that seats on
> the strap, a stop surface that contacts the
> bracket, or that minimizes the lateral
> movement of the strap either literally or
> under the doctrine of equivalents, none of
> the claims are infringed as a matter of law.

Br. in Supp. of Mot. at 23.

The court agrees that when the strap limitations mentioned

above are properly construed, defendants' landing gear assembly

does not infringe the '242 patent because those limitations are

not met.  The accused assembly does not contain a strap as
required by the claims in the '242 patent.  The ordinary meaning
of the limitations under discussion requires that the bracket
seats on the strap and that the stop surface of the strap
contacts the bracket to minimize movement.  Inasmuch as the
movement of the bracket on the strap is what must be minimized by
the stop surface, necessarily the claims require the bracket to
be seated on top of the strap--otherwise, there would be no
movement of the bracket <u>on the strap</u> to be minimized.  This claim
construction is supported by the various descriptions of the
invention in the specification, which consistently describe and
show the patented assembly as having the bracket fitting over the
strap.  Mot., App. at 27, fig. 2A.  The '242 patent specification
states that "the upper bracket 22a fits over the strap 20 which
in turn is fastened to the top of the crosstube 14."  <u>Id.</u> at 33
[col. 3, lines 60-62].  And, the specification also states that
each "upper bracket 22a is fastened to its corresponding lower
bracket 22b so as to clamp around the corresponding crosstube 14
and strap 20."  <u>Id.</u> at 32-33 [col. 2, line 66 to col. 3, line 2].

On the subject of the stop surfaces on the strap, the
specification states that "[i]f forces are applied to bracket 22
or to crosstube 14 that tend to slide the bracket longitudinally

along strap 20, one of the stop surfaces 34 will engage side 60 of contact bands 58 of one of the brackets 22 and prevent the movement of bracket 22 with respect to strap 20 or crosstube 14." Id. at 33 [col. 4, lines 13-18]. According to the claims, the mating of a stop surface on the bracket is what minimizes the lateral movement of the bracket on the strap, id. at 34 [col. 6, lines 25-27]; and, the ordinary meaning of the term "mating" requires that there at least be contact between the stop surface and the bracket at some point in time.

The summary judgment evidence shows without dispute that the EC 120 helicopter landing gear assembly does not meet the strap limitations. There is no strap on the front crosstube of that assembly used in connection with the brackets that secures the crosstube to the helicopter fuselage. Id. at 36. The bracket on the rear crosstube clamps around a rubber gasket surrounding the crosstube, not a strap. The gasket cannot be considered to be a strap inasmuch as it has no holes in it. Id. The only pieces with holes for connection to the crosstubes are the stop pieces. Id. However, the bracket does not clamp around or seat on top of the stop pieces. Id. Consequently, there cannot be lateral movement of the bracket on the strap or stop that can be minimized. In addition, there is no stop surface on each stop on

the rear crosstube that contacts or otherwise mates with the bracket. <u>Id.</u> at 36, 41. The side of the stop only contacts the side of the rubber gasket.

For the reasons given above, the undisputed summary judgment evidence of probative value is that the landing gear assembly of the EC 120 helicopter cannot be found to infringe any claim of the '242 patent.[6] Plaintiff's backup argument that the doctrine of equivalents is expansive enough to cause defendants' landing gear assembly to infringe the '242 patent does not find support in the probative summary judgment evidence.

---

[6]The court does not consider that statements made by attorney Colin P. Cahoon in his declaration constitute probative summary judgment evidence on the subjects being discussed under this sub-subheading 2. <u>See</u> Br. in Opp'n, App. at 87-112. The court views the statements made in that declaration as being nothing other than a supplement by an attorney employed by plaintiff in this case to the attorney legal arguments made by plaintiff in its brief in opposition to the motion for summary judgment. Attorney legal argument cannot be converted into probative summary judgment evidence simply by moving it from a brief into a declaration by an attorney representing the party. Similarly, the court is not persuaded that the declaration of Daniel P. Schrage, <u>see id.</u> at 114-121, is probative summary judgment evidence that raises any fact issue related to the subject discussed under sub-subheading 2. As the Federal Circuit has explained :

> [C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court. Similarly, a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.

<u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (quotation marks omitted) (quoting <u>Key Pharms v. Hercon Labs. Corp.</u>, 161 F.3d 709, 716 (Fed. Cir. 1998)).

C.  Conclusion

For each of the alternative reasons discussed above, the court has concluded that plaintiff has failed to adduce summary judgment evidence raising a genuine issue of material fact that the helicopter landing gear assembly manufactured and sold by defendants infringed the '242 patent. There might well be merit to one or more of the other reasons given by defendants for a ruling of noninfringement, but there would be nothing to gain by a study and resolution of the competing contentions of the parties as to those other reasons inasmuch as the rulings the court has made on each of the first two reasons are dispositive.

V.

Order

Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and that all claims made by plaintiff in count III be, and are hereby, dismissed.

SIGNED February 25, 2011.

_____
JOHN McBRYDE
United States District Judge